UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                            :

STEVEN TRIMMER on behalf of himself and all  :
others similarly situated,                          :
                                            :

          Plaintiff,                  :
                                            :

          -against-                  :     13-CV-0579 (JGK-SN)
                                            :

BARNES & NOBLE, INC. and BARNES &      :
NOBLE BOOKSELLERS, INC.,             :
                                            :

          Defendants.               :
                                            :
--------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated:  New York, New York
         November 25, 2013

Edward Cerasia II
Brian J. Gershengorn
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

Attorneys for Defendants
Barnes & Noble, Inc. and Barnes & Noble Booksellers, Inc.

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................................... 1

II. STATEMENT OF FACTS ......................................................................................... 1

    A.      THE PARTIES ........................................................................................ 1

    B.      PRIOR TO JULY 1, 2010, TRIMMER AND PHILBIN WERE
           CLASSIFIED AS EXEMPT FROM OVERTIME .................................... 2

    C.      PRIOR TO JULY 1, 2010, TRIMMER'S AND PHILBIN'S
           PRIMARY DUTIES WERE MANAGING THE DAY-TO-DAY
           OPERATIONS OF THEIR RESPECTIVE STORES ............................... 2

           1.      Trimmer Managed The Day-To-Day Operation Of The
                  Tribeca Store Prior To July 1, 2010 .................................... 4

           2.      Philbin Managed The Day-To-Day Operation Of The
                  Chesapeake Bay Store Prior To July 1, 2010 ................................ 5

    D.      B&N RECLASSIFIED THE ASM POSITION AS NON-
           EXEMPT FROM THE OVERTIME REQUIREMENTS OF THE
           FLSA AS A PRECAUTION ..................................................................... 6

    E.      TRIMMER'S AND PHILBIN'S PRIMARY DUTIES DID NOT
           CHANGE FOLLOWING THE RECLASSIFICATION ........................... 7

III. ARGUMENT .......................................................................................................... 8

    A.      THE APPLICABLE SUMMARY JUDGMENT STANDARD ............... 8

    B.      PLAINTIFFS' FLSA OVERTIME CLAIMS ARE BARRED BY
           THE TWO-YEAR STATUTE OF LIMITATIONS .................................. 9

    C.      B&N IS ENTITLED TO SUMMARY JUDGMENT ON
           PLAINTIFFS' OVERTIME CLAIMS BECAUSE THEY WERE
           EXEMPT ................................................................................................ 14

           1.      Plaintiffs Were Exempt Under The Administrative
                  Exemption .................................................................................... 15

               a.    Plaintiffs Were Compensated On A Salary Basis Well
                    In Excess Of $455 Per Week .................................... 16

        b.   Plaintiffs' Primary Duties Directly Related To B&N's General Business Operations ..................................................16

        c.   Plaintiffs' Primary Duties Included The Exercise Of Discretion And Independent Judgment On Matters Of Significance .......18

    2.   Plaintiffs Were Exempt Under The Executive Exemption .......... 21

        a.   Plaintiffs Were Compensated On A Salary Basis Well In Excess Of $455 Per Week.......................................................21

        b.   Plaintiffs' Primary Duty Was Management ...........................21

        c.   Plaintiffs Customarily And Regularly Directed The Work Of Two Or More B&N Employees.........................................23

        d.   Plaintiffs Had Authority To Hire Or Fire Other Employees And/Or Their Recommendations Were Given Particular Weight.................................................................................24

D.     SHOULD THE COURT DISMISS PLAINTIFFS' FLSA CLAIMS, TRIMMER'S NYLL CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION ............................................................................. 24

IV. CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Coil Tubing Services, L.L.C.,*
　2011 U.S. Dist. LEXIS 119466 (S.D. Tx. Oct. 17, 2011) ......................................................10

*Amendola v. Bristol-Myers Squibb Co.,*
　558 F. Supp. 2d 459 (S.D.N.Y. 2008).............................................................................18, 19

*Amnesty Am. v. Town of W. Hartford,*
　288 F.3d 467 (2d Cir. 2002)..................................................................................................8

*Anderson v. Liberty Lobby, Inc.,*
　477 U.S. 242 (1986)...........................................................................................................8, 9

*Bowrin v. Catholic Guardian Soc'y,*
　417 F. Supp. 2d 449 (S.D.N.Y. 2006).............................................................................13, 14

*Brown v. Nipper Auto Parts,*
　2009 U.S. Dist. LEXIS 43213 (W.D. Va., May 21, 2009) .................................................11, 13

*Celotex Corp. v. Catrett,*
　477 U.S. 317 (1986).............................................................................................................8

*Clarke v. JP Morgan Chase Bank,*
　2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) .........................................................9, 10, 12, 14

*Cobb v. Contract Transport, Inc.,*
　2007 U.S. Dist. LEXIS 45043 (E.D. Ky. June 21, 2007) ........................................................13

*Donovan v. Burger King Corp.,*
　675 F.2d 516 (2d Cir.1982)..............................................................................................19, 20, 22

*Downes v. JP Morgan Chase & Co.,*
　2007 U.S. Dist. LEXIS 36677 (S.D.N.Y. May 16, 2007)........................................................15

*Dymond v. U.S. Postal Serv.,*
　670 F.2d 93 (8th Cir. 1982) .............................................................................................18, 19

*El v. Potter,*
　2004 WL 2793166 (S.D.N.Y. Dec. 6, 2004) .........................................................................10

*Fenton v. Farmers Ins. Exch.,*
　663 F. Supp. 2d 718 (D. Minn. 2009)..............................................................................11, 14

*Grant v. The Shaw Group, Inc.,*
　2012 U.S. Dist. LEXIS 4733 (E.D. Tenn. Jan. 17, 2012).......................................................13

*Gustafson v. Bell Atl. Corp.*,
171 F. Supp. 2d 311 (S.D.N.Y. 2001)................................................................13

*Hippen v. First Nat'l Bank of Phillipsburg, Kan.*,
1992 WL 73554 (D. Kan. Mar. 19, 1992) ..........................................................18

*Icicle Seafoods, Inc. v. Worthington*,
475 U.S. 709 (1986)............................................................................................15

*Kahn v. Superior Chicken & Ribs, Inc.*,
331 F. Supp. 2d 115 (E.D.N.Y. 2004) ..........................................................23, 24

*Klein v. Torrey Point Group, LLC*,
2013 WL 5761401 (S.D.N.Y. Oct. 23, 2013) ................................................15, 19

*Lichtman v. Martin's News Shops Mgmt., Inc.*,
81 A.D.3d 696 (2d Dep't 2011) .........................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..............................................................................................9

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988)............................................................................................10

*Ramos v. Baldor Specialty Foods, Inc.*,
687 F.3d 554 (2d Cir. 2012)...............................................................................24

*Reich v. John Alden Life Ins. Co.*,
126 F.3d 1 (1st Cir. 1997)...................................................................................17

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
591 F.3d 101 (2d Cir. 2010)...............................................................................15

*Saunders v. City of N.Y.*,
594 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................10

*Savage v. UNITE HERE*,
2008 WL 1790402 (S.D.N.Y. Apr. 17, 2008)................................................17, 18

*W. World Ins. Co. v. Stack Oil, Inc.*,
922 F.2d 118 (2d Cir. 1990)................................................................................9

*Walling v. General Industries Co.*,
330 U.S. 545 (1947)............................................................................................22

*Ward v. Bank of New York*,
455 F. Supp. 2d 262 (S.D.N.Y. 2006)................................................................25

iv

*Wright v. Monroe County, N.Y.*,
  2007 WL 1434793 (W.D.N.Y. May 14, 2007) .......................................................23

*Young v. Cooper Cameron Corp.*,
  586 F.3d 201 (2d Cir. 2009) ................................................................................9

*Yourman v. Dinkins*,
  865 F. Supp. 154 (S.D.N.Y. 1994) ...........................................................12, 13, 14

## STATUTES

29 U.S.C. § 213(a)(1) .............................................................................................15, 21

29 U.S.C. § 255(a) .......................................................................................................9

Fair Labor Standards Act ................................................................................... passim

New York Labor Law ("NYLL") ..........................................................................1, 24, 25

## OTHER AUTHORITIES

29 C.F.R. § 541.100 ..............................................................................................21, 24

29 C.F.R. § 541.200 .........................................................................................15, 16, 18

29 C.F.R. § 541.201 .........................................................................................16, 17, 18

29 C.F.R. § 541.202 .........................................................................................17, 18, 19

29 C.F.R. § 541.701 ..................................................................................................23

12 N.Y.C.R.R. § 142-2.14 ..........................................................................................16

Fed. R. Civ. P. 56 ......................................................................................................8

## I.  PRELIMINARY STATEMENT

Defendants Barnes & Noble, Inc. and Barnes & Noble Booksellers, Inc. (collectively, "B&N") respectfully submit this memorandum of law in support of their Fed. R. Civ. P. 56 motion for summary judgment seeking the dismissal of plaintiff Steven Trimmer's ("Trimmer's") and opt-in plaintiff Eileen Philbin's ("Philbin's") (collectively "Plaintiffs'") Fair Labor Standards Act ("FLSA") claims and Trimmer's New York Labor Law ("NYLL") claim.

As demonstrated below, the Court should grant summary judgment in favor of B&N on Plaintiffs' FLSA claims because those claims are barred by the two-year statute of limitations period.  Plaintiffs cannot avail themselves of the three-year statute of limitations period, which is applicable to willful violations only, because it is black letter law that no willful violation can lie where, as here, there is no evidence that B&N knew that its original classification of Plaintiffs as overtime exempt was improper under the FLSA.

Even if Plaintiffs could avail themselves of the three-year statute of limitations period – and they certainly cannot do so – their FLSA claims still fail because B&N properly classified them as exempt under the administrative and/or executive exemptions, and thus they were not eligible for overtime.  Since the NYLL incorporates the FLSA's exemptions, Trimmer's NYLL claim fails for the same reason.  Accordingly, the Court should grant summary judgment and dismiss Plaintiffs' FLSA claims and Trimmer's NYLL claim.

Finally, should the Court grant summary judgment as to Plaintiffs' FLSA claims, the Court should dismiss Trimmer's NYLL claim for lack of jurisdiction.

## II. STATEMENT OF FACTS

### A.  THE PARTIES

Trimmer worked for B&N at its Tribeca store in New York City as an Assistant Store Manager ("ASM") from October 2007 until his employment was terminated on January 8, 2013

for his unsatisfactory job performance.  (Defendants' Local Civil Rule 56.1 Statement ("Defs. 56.1"), ¶ 1.)  Trimmer filed this lawsuit on January 25, 2013.  (*Id.*, ¶ 41.)  Philbin began working for B&N in 1994, as a Supervisor at the Virginia Beach, VA store.  (*Id.*, ¶ 2.)  Philbin worked as an ASM at the Virginia Beach store from approximately August 2, 1995 to June 1, 1996.  (*Id.*)  Since June 2, 1996, Philbin has worked as an ASM at B&N's store in Chesapeake, VA.  (*Id.*)  Philbin opted into this litigation on January 31, 2013.  (*Id.*, ¶ 42.)

B&N is a book retailer that operates 674 retail stores.  (*Id.*, ¶ 3.)  Barnes & Noble Booksellers, Inc. is a subsidiary of Barnes & Noble, Inc.  (*Id.*)

**B.     PRIOR TO JULY 1, 2010, TRIMMER AND PHILBIN
        WERE CLASSIFIED AS EXEMPT FROM OVERTIME**

Prior to July 1, 2010, B&N classified ASMs in every state, except for California, as exempt from the overtime provisions of the FLSA.  (Defs. 56.1, ¶ 4.)  Accordingly, Trimmer and Philbin were classified as exempt from overtime prior to July 1, 2010.  (*Id.*, ¶ 5.)  At no point prior to July 1, 2010 did Trimmer or Philbin ever complain to B&N about being exempt from overtime, or raise any issue in regards to their classification or compensation.  (*Id.*, ¶ 6.)  It was only after B&N terminated Trimmer's employment in January 2013 for poor job performance that he first complained about any alleged wage and hour violations.  (*Id.*)

**C.     PRIOR TO JULY 1, 2010, TRIMMER'S AND PHILBIN'S PRIMARY
        DUTIES WERE MANAGING THE DAY-TO-DAY OPERATIONS
        OF THEIR RESPECTIVE STORES**

The "Job Description" for the ASM position held by Trimmer and Philbin provided that each ASM was "responsible for the daily operations of the store" in which they worked.  (*Id.*, ¶ 7.)  Specifically, the Job Description required ASMs to serve as the "manager on duty" ("MOD") of their respective stores, and "open and close the store, oversee general store operations and ensure compliance with all standards of operation and performance, supervise

2

booksellers, identify, prioritize and assign tasks with matching bookseller with store needs and react immediately and appropriately to all employee, customer or store issues."  (*Id.*, ¶ 8.) "When fulfilling the role of [MOD]," Trimmer and Philbin were "responsible for the entire store and staff."  (*Id.*, ¶ 9.)

In addition, the Job Description included the following "Essential Functions" for the ASM, which make plain the exempt classification for the ASM:

- "Manages the daily operations of the store in partnership with the store manager and the store's management team";

- "Delivers positive financial results through efficient execution of initiatives and utilizes financial reports to identify additional sales and profit opportunities";

- "Plans and appropriates work to optimize payroll budget and to achieve the sales per hour (SPH) goal while ensuring compliance with all Integrated Store Operations (ISO) standards";

- "Protects company assets by assisting in the management of both internal and external shrink for their store";

- "Selects, interviews and recommends the hiring of new booksellers; oversees and monitors the new hire orientation and training process, ensuring a smooth acclimation to the store and the Barnes & Noble culture";

- "Coaches and counsels all booksellers on performance issues and takes appropriate corrective action in partnership with the store manager";

- "Coaches and counsels all booksellers to drive sales and deliver the four core service principles:  put the book in the customer's hand, offer to order, offer membership and fast cashiering";

- "Prepares and delivers performance reviews to booksellers and develops performance plans and goals in partnership with the store manager";

- "Resolves customer complaints in accordance with all operational and human resource guidelines, surfacing issues to the store manager when necessary";

- "Drives sales by identifying local store opportunities and acting upon institutional sales and bookfairs; establishes a community relations network with the store manager, tailoring merchandise selection to the local customer";

3

- "Executes e-Planner to standard; customizes, communicates, delegates and follow-up on all tasks as the business demands"; and

- "Actively participates in the execution of recommended recognition programs, providing positive feedback to team members on a consistent basis." (*Id.*, ¶10.)

Significantly, Trimmer admits that the Job Description was an accurate reflection of his job duties with the limited exception of its reference to "oversee[ing] and monitor[ing] the new hire orientation and training process." (*Id.*, ¶ 11.)  Likewise, Philbin admits that the Job Description was an accurate reflection of her job duties with the limited exception of a lack of sufficient emphasis on "customer service." (*Id.*, ¶ 12.)

### 1.    Trimmer Managed The Day-To-Day Operation Of The Tribeca Store Prior To July 1, 2010

Trimmer was the highest-level manager in the Tribeca store whenever the Store Manager was not at the store.  (Defs. 56.1, ¶ 13.)  During Trimmer's five-day workweek, the Store Manager was rarely present.  (*Id.*)  Trimmer served as the MOD every day during his five-day work week.  (*Id.*, ¶ 14.)  While serving as the MOD, Trimmer was responsible for the entire Tribeca store and made sure that the store was operating efficiently.  (*Id.*)  As the MOD, Trimmer had discretion to assign work to employees, recommend that employees be terminated, authorize returns, provide customers with refunds, provide customers with discounts, handle customer complaints, direct unruly customers to leave the store, manage loss prevention, manage cash handling problems, manage outside vendors, and determine whether in-store displays were set up properly.  (*Id.*, ¶ 15.)  Trimmer actively supervised the following positions:  Café Manager, Merchandise Manager, Music Manager, Receiving Manager, and Bookseller.  (*Id.*, ¶ 16.)  Trimmer also was responsible for "push[ing]" the employees he supervised "to get results for the store."  (*Id.*)

As an ASM, Trimmer carried a key to the Tribeca store and had the code to disarm/arm the store's security alarm. (*Id.*, ¶ 17.) On certain days of each week, Trimmer was responsible for opening the Tribeca store and disarming its security alarm. (*Id.*, ¶ 18.) On the days when Trimmer opened the store, he led a morning meeting with the store's employees. (*Id.*) During those meetings, Trimmer made recommendations to employees as to things they could do to increase sales and work more effectively. (*Id.*) About three to five days per week, Trimmer was responsible for closing the Tribeca store and arming its security alarm. (*Id.*, ¶ 19.)

Trimmer also interviewed candidates for hire, made recommendations as to whether a candidate for hire should receive a job offer, monitored employees to track their productivity, coached booksellers, disciplined booksellers through verbal counseling that was subsequently documented, prepared performance reviews of the employees he supervised, and delivered performance reviews to booksellers. (*Id.*, ¶ 20.)

### 2.    Philbin Managed The Day-To-Day Operation Of The Chesapeake Bay Store Prior To July 1, 2010

Philbin was the highest-level manager in the Chesapeake Bay store whenever the Store Manager was not present. (Defs. 56.1, ¶ 22.) Philbin served as the MOD two to three times per week. (*Id.*, ¶ 23.) In her capacity as the MOD, Philbin had responsibility for the entire store and supervised all of its employees. (*Id.*) While working as the MOD, Philbin walked through the store to ensure that it was operating efficiently, and carried a phone through which any employee in the store could reach her via an extension that rang directly to her as the MOD. (*Id.*, ¶ 24.) The employees Philbin supervised included a Café Manager, a Music Manager, two Department Managers, a Receiving Manager, a Community Relations Manager, around four Lead Booksellers, one to two Head Cashiers, and around ten to twenty booksellers. (*Id.*, ¶ 25.)

As an ASM, Philbin possessed a key to the Chesapeake Bay store, and was responsible for opening and closing the store.  (*Id.*, ¶ 26.)  When Philbin worked a morning shift as the MOD, she led the morning meeting with the store's employees.  (*Id.*)

Philbin had discretion to assign work to employees, resolve issues or questions raised by employees, authorize returns, provide customers with discounts, handle customer complaints, and manage loss prevention.  (*Id.*, ¶ 27.)  Philbin also interviewed candidates for hire, supervised employees, trained and coached booksellers, counseled booksellers, prepared performance reviews of booksellers, and delivered performance reviews to booksellers.  (*Id.*, ¶ 28.)

## D.   B&N RECLASSIFIED THE ASM POSITION AS NON-EXEMPT FROM THE OVERTIME REQUIREMENTS OF THE FLSA AS A PRECAUTION

From 2005 to 2010, decisions concerning the classification of certain jobs at B&N as exempt or non-exempt from overtime were made by a group of senior-level B&N employees (the "Committee").  (Defs. 56.1, ¶30.)  The Committee included Michelle Smith ("Smith"), Vice President of Human Resources; Mark Bottini ("Bottini"), Vice President Director of Stores; Janet Brienza, the Director of Compensation; and B&N regional directors.  (*Id.*)

Smith has been the Vice President of B&N's Human Resources Department since 1996. (*Id.,* ¶ 31.)  Smith has an in-depth knowledge and understanding of the FLSA from the perspective of an experienced Human Resources professional and has belonged to the Society of Human Resource Management ("SHRM") for at least 20 years.  (*Id.*, ¶ 32.)  Moreover, from 2005 to 2010, Smith was involved in at least three decisions the Committee made concerning the classification of certain positions at B&N as exempt or non-exempt from overtime.  (*Id.*)

Bottini has been B&N's Vice President, Director of Stores since 2003.  (*Id.*, ¶ 34.)  In that role, Bottini is responsible for the operations of all of B&N's 674 retail stores, including,

among other things, implementing B&N's policies and procedures and determining whether to classify B&N employees as overtime exempt.  (*Id.*)

Prior to 2005, B&N classified ASMs in all 50 states as exempt from the overtime requirements of the FLSA.  (*Id.*, ¶ 35.)  In 2005, the Committee, based solely on California law, reclassified only the California ASMs as non-exempt.  (*Id.*)  Then, around May 2010, as a result of the introduction of a digital sales lead position (the "digital sales lead") into B&N's stores, the Committee began discussing the classification of ASMs in every state, except for California, as exempt from overtime.  (*Id.*, ¶ 36.)  Although the Committee reasonably believed that the ASM position was properly classified as exempt, it ultimately reclassified ASMs as non-exempt, effective July 1, 2010.  (*Id.*)  The Committee's decision to reclassify the ASMs was made prospectively in anticipation that ASMs might perform non-managerial work in the future.  (*Id.*, ¶ 37.)  Specifically, B&N was interested in minimizing the payroll cost of integrating the digital sales lead into its stores – a development aimed at increasing the sales of B&N's Nook product.  (*Id.*)  The Committee recognized that one way to minimize the cost was to enlist ASMs to perform more tasks.  (*Id.*)  Consequently, the Committee determined that it would be prudent to reclassify the ASMs.  (*Id.*)  The Committee's decision was a collaborative effort that reflected the input of senior-level members of its Human Resources and Operations Departments and was based in part on Smith's professional experience and solid knowledge of the FLSA.  (*Id.*, ¶ 38.)

## E.   TRIMMER'S AND PHILBIN'S PRIMARY DUTIES DID NOT CHANGE FOLLOWING THE RECLASSIFICATION

The primary function of the ASM position – the MOD role – did not change after the reclassification on July 1, 2010.  (Defs. 56.1, ¶ 39.)  B&N believes that, even though the ASM position is currently classified as non-exempt, most ASMs would more accurately be classified

as exempt.  (*Id.*, ¶ 40.)  Indeed, Philbin confirmed that her primary duties did not change after the reclassification.  (*Id.*)

### III.  ARGUMENT

### A.   THE APPLICABLE SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "the pleadings, the discovery . . . [and] affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment provides a procedure to make determinations without recourse to a costly, lengthy and unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that there is an absence of a genuine material issue of fact or that "there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  A moving party need only show the absence of proof of any of the essential elements of the non-movant's case.  *Id.* at 323.  Once a properly supported motion for summary judgment has been made, the non-moving party must proffer admissible evidence demonstrating that a trial is required because disputed issues of material facts exist.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When evaluating a motion for summary judgment, the Court does not have "an obligation . . . to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  The non-moving party must identify with reasonable particularity the "concrete evidence from which a reasonable [fact-finder] could return a verdict in [its] favor" and must do more than present evidence that is

merely colorable, conclusory or speculative. *Anderson*, 477 U.S. at 256; *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (non-moving party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts. . ., or defeat the motion through mere speculation or conjecture") (citations and quotations omitted).  In the end, the non-movant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Applying this standard to the undisputed facts, summary judgment should be granted in favor of B&N.

**B.    PLAINTIFFS' FLSA OVERTIME CLAIMS ARE BARRED
        BY THE TWO-YEAR STATUTE OF LIMITATIONS**

The statute of limitations for FLSA claims is two years.  29 U.S.C. § 255(a).  That period is extended to three years *only if* a plaintiff proves a "willful" violation.  *Id.*

It is undisputed that Plaintiffs were reclassified as non-exempt on July 1, 2010; thus, under the two-year limitations period, they had until July 1, 2012 to file an FLSA claim with the Court.  Trimmer filed his Complaint on January 25, 2013 and Philbin filed her opt-in form on January 31, 2013 – well past the end of the two-year limitations period.  (Def.'s 56.1, ¶¶ 41-42.) As demonstrated below, Plaintiffs' FLSA claims are barred by the two-year limitations period and they cannot raise any genuine issue as to whether B&N's alleged FLSA violation was willful. *E.g., Clarke v. JP Morgan Chase Bank*, 2010 WL 1379778, at *9 (S.D.N.Y. Mar. 26, 2010) (granting summary judgment, concluding FLSA claims filed after the two-year limitations period were time-barred because plaintiff failed to show alleged FLSA violation was willful).

Employees who seek to prove a willful FLSA violation bear the burden of proving willfulness. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (employee must prove willfulness).  A violation is considered "willful" only if "the employer either knew or

9

showed reckless disregard for . . . whether its conduct was prohibited by the statute."

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Saunders v. City of N.Y.*, 594 F.

Supp. 2d 346, 358 (S.D.N.Y. 2008) (willfulness requires a "factual showing" of employer's

knowing or reckless violation of FLSA).  "'Congress intended to draw a *significant* distinction

between ordinary violations and willful violations of the [FLSA].'"  *Clarke*, 2010 WL 1379778,

at *10 (quoting *McLaughlin*, 486 U.S. at 132) (emphasis added).  "In common usage the word

'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and

'intentional.'"  *McLaughlin*, 486 U.S. at 133.  "[W]illful . . . is generally understood to refer to

conduct that is not merely negligent."  *Id.*; *El v. Potter*, 2004 WL 2793166, at *5 (S.D.N.Y. Dec.

6, 2004) ("Willfulness cannot be found where the employer acted negligently or assumed in

good faith, but incorrectly, that its conduct complied with the FLSA.").  The Supreme Court has

stated that, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot

be deemed willful."  *McLaughlin*, 486 U.S. at 135 n.13.  Indeed, even an employer who has

acted "'unreasonably, but not recklessly, in determining its legal obligation'" cannot be held

liable for a willful violation.  *Clarke*, 2010 WL 1379778, at *10 (quoting *McLaughlin*, 486 U.S.

at 135 n.13).

It is appropriate to resolve the issue of willfulness on a motion for summary judgment –

especially here, where Plaintiffs cannot put forth any admissible evidence to create a genuine

issue of material fact that B&N knew or showed reckless disregard in how it classified ASMs.

*Clarke*, 2010 WL 1379778, at *10 ("An FLSA plaintiff seeking to invoke the three-year

limitations period cannot survive a motion for summary judgment unless he make[s] a competent

demonstration that there [is a] trialworthy issue as to whether [the employer] either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute.")

10

(quotations and citations omitted).  Much like *Clarke*, courts outside of this District have reached

the same conclusion.  *Allen v. Coil Tubing Services, L.L.C.,* 2011 U.S. Dist. LEXIS 119466, at

*103 (S.D. Tx. Oct. 17, 2011) (granting summary judgment holding that FLSA claim was barred

by two-year limitations period and stating that defendant's "failure to seek legal advice regarding

its payment method" did not support "a finding of willfulness"); *Fenton v. Farmers Ins. Exch.*,

663 F. Supp. 2d 718, 728 (D. Minn. 2009) (granting summary judgment dismissing time-barred

FLSA claim because plaintiffs failed to meet the "weighty burden" for proving willfulness);

*Brown v. Nipper Auto Parts*, 2009 U.S. Dist. LEXIS 43213, at *14-16 (W.D. Va., May 21, 2009)

(granting summary judgment on ground that FLSA claim was barred by two-year statute of

limitations since plaintiff failed to come forward with any evidence for jury to conclude that

defendant's conduct was willful).  This Court should reach the same result.

     The undisputed record here makes plain that Plaintiffs have no evidence, let alone

competent evidence, to prove that B&N willfully violated the FLSA by classifying ASMs as

overtime exempt prior to July 1, 2010.  Smith and Bottini – senior-level B&N employees who

are well-versed in the FLSA – were involved in B&N's decision to keep the ASMs exempt

before July 1, 2010.  (Defs. 56.1, ¶ 30.)  Smith has served as B&N's Vice President of Human

Resources for almost twenty years, has belonged to SHRM for at least 20 years, and has an in-

depth knowledge and understanding of the FLSA from the perspective of an experienced, senior-

level human resources officer.  (*Id.*, ¶¶ 31-32.)  In fact, Smith demonstrated during her

deposition that she understands both the administrative and executive exemptions and provided

the criteria that an employer must meet in order for employees to fit within the exemptions.  (*Id.*,

¶ 32.)  Moreover, Smith testified that she often observed the ASMs on her store visits and

discussed the position with them.  (*Id.*, ¶ 33.)  Since 2005, Smith has been involved in at least

three of B&N's decisions concerning the classifications of certain employees under the FLSA. (*Id.*, ¶ 32.)  Bottini has served as B&N's Vice President, Director of Stores for ten years, and has been responsible for the operations of all of B&N's 674 retail stores during that time, including decisions concerning the classification of B&N employees under the FLSA.  (*Id.*, ¶ 34.)  Notably, neither Philbin nor Trimmer ever complained about their exempt status, or even raised the issue at all, prior to July 2010, so they cannot show that B&N was on notice of any alleged misclassification.[1]  These facts show that dismissal is appropriate.  *Clarke*, 2010 WL 1379778, at *10-12 (court ruled that there was no evidence of a willful violation under FLSA where facts showed that the company undertook a periodic review of employees' exempt status, with no prior employee complaints).

Plaintiffs conceded at the pre-motion conference that they do not rely on the reclassification as evidence of a willful violation, nor could they.  The Committee's reasoned approach to the original classification of the ASMs as exempt (and the reclassification of the ASM position) is directly contrary to the type of culpable conduct required to establish a willful violation.  *See Yourman v. Dinkins*, 865 F. Supp. 154, 159 (S.D.N.Y. 1994) ("To carry their burden of proof on the issue of knowledge, plaintiffs must show that defendants maintained their time and leave policies with full awareness that doing so rendered the classification of plaintiffs as FLSA-exempt improper."), *aff'd*, 84 F.3d 655 (2d Cir. 1996).  B&N's reclassification was "a good-faith effort to ensure that [B&N's] classification of its employees complied with the

---

[1]    Trimmer never complained to B&N about being exempt, or even raised the issue at all, prior to his termination in 2013.  (Defs. 56.1, ¶ 6)  There is no evidence suggesting that Philbin complained about her exempt status prior to June 2010.

FLSA" going forward and "a conservative measure adopted at a time when FLSA collective action overtime lawsuits were becoming more and more common."  *Clarke*, 2010 WL 1379778, at *12 (no willful violation where reclassification was the employer's good-faith effort to ensure that its employees were properly classified under FLSA); *see also Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 475-76 (S.D.N.Y. 2006) (no willful violation where plaintiffs "have not presented evidence that [defendant] *knew* it was violating the FLSA," and defendant had "ma[d]e some effort[s] to ascertain whether it was entitled to an exemption") (emphasis in original); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (no willful violation where there was "nothing in the record to support" plaintiff's bare allegation that defendant "willfully attempted to conceal plaintiff's eligibility for overtime"); *Yourman*, 865 F. Supp. at 160 (no willful violation where there was no evidence "that defendants actually perceived the illegality of maintaining their . . . policies"); *Grant v. The Shaw Group, Inc.*, 2012 U.S. Dist. LEXIS 4733, at *39 (E.D. Tenn. Jan. 17, 2012) (employer's conduct not willful where manager testified that he took steps to ensure that employees were exempt such as interviewing supervisors, interviewing the human resources professional, reviewing the job descriptions and reviewing the FLSA).

In the end, Plaintiffs' sole argument is that B&N willfully violated the FLSA by not consulting with either in-house or outside counsel concerning the classification of its ASMs prior to July 2010.  However, that argument has no basis in law.  "[T]he FLSA does not enumerate or detail the steps an employer must take in order to be found to have acted in good faith, and does not require an employer to seek a legal opinion."  *Grant*, 2012 U.S. Dist. LEXIS 4733, at *40; *see also Cobb v. Contract Transport, Inc.*, 2007 U.S. Dist. LEXIS 45043, at *2 (E.D. Ky. June 21, 2007) (defendant need not contact an attorney in order to establish that it acted in good faith);

13

*Brown,* 2009 U.S. Dist. LEXIS 43213, at *14 (employer complied with the FLSA, and thus its conduct was not willful, even though it failed to seek legal counsel in regards to its compensation structure and instead relied upon its business experience that its salaried employees were not due overtime). Only those employers who "actually perceived the illegality of maintaining" their job classifications may be held liable for a willful violation. *Yourman*, 865 F. Supp. at 160; *Bowrin*, 417 F. Supp. 2d at 475-76 (no willful violation where defendant had at least "ma[d]e some effort to ascertain whether it was entitled to an exemption"). Thus, even assuming, *arguendo*, that B&N acted negligently, or unreasonably, in failing to consult an attorney regarding the ASM classification or in maintaining the exempt classification before July 1, 2010 – and there is no evidence to support such a finding – such conduct is still insufficient to establish willfulness.

Since Plaintiffs cannot offer any competent evidence to prove a willful violation of the FLSA, the two-year statute of limitations applies to their FLSA claims. *Clarke*, 2010 WL 1379778, at *10; *Fenton*, 663 F. Supp. 2d at 728 (concluding that plaintiffs could not rely on the three-year statute of limitations because there was no evidence affirmatively proving willfulness; to hold otherwise, would allow plaintiffs to "reassign the burden of proof"). Therefore, the Court should grant summary judgment dismissing the FLSA claims as time-barred.

## C.   B&N IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' OVERTIME CLAIMS BECAUSE THEY WERE EXEMPT

Summary judgment in B&N's favor is warranted even if the Court were to rule that Plaintiffs' FLSA claims are not time-barred, because there is no genuine issue of fact regarding Plaintiffs' status as exempt administrative and/or executive employees prior to July 1, 2010.[2]

---

[2]      Under a three-year limitations period, Trimmer's FLSA claim would be limited to the time period between January 25, 2010 and June 30, 2010, and Philbin's claim would be limited

The FLSA exempts from overtime those employees working in a "bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  The ultimate decision of whether an employee is exempt is a question of law for the Court to resolve.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Downes v. JP Morgan Chase & Co.*, 2007 U.S. Dist. LEXIS 36677, at *33 (S.D.N.Y. May 16, 2007) (citing *Freeman v. Nat'l Broadcasting Co.*, 80 F.3d 78, 82 (2d Cir. 1996), stating:  "The ultimate question of a particular worker's exemption, based on factual findings as to [his] actual work activities, requires a conclusion of law.").  The administrative and executive exemptions under New York law parallel those of the FLSA, and courts regularly apply the FLSA regulations when evaluating the applicability of the exemptions under New York law.  *See, e.g.*, *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010); *Klein v. Torrey Point Group, LLC*, 2013 WL 5761401, at *3 n.2, 8 (S.D.N.Y. Oct. 23, 2013).

### 1.       Plaintiffs Were Exempt Under The Administrative Exemption

Plaintiffs' own testimony and their Job Description, which they admit accurately reflected their actual job duties, shows that they were properly classified as exempt from overtime prior to July 2010, under the administrative exemption.

Under the FLSA's administrative exemption, B&N is entitled to summary judgment because: (1) Plaintiffs were paid a salary of at least $455 per week; (2) Plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of B&N or its customers; and (3) Plaintiffs' primary duty included the

---

to the time period between January 31, 2010 and June 30, 2010.

exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.

### a.       Plaintiffs Were Compensated On A Salary Basis Well In Excess Of $455 Per Week

Plaintiffs met the first requirement of the administrative exemption because B&N paid each of them a salary exceeding $455 per week during the relevant time period.  Trimmer's annual salary as of October 2007 was $42,000, which then increased in March 2008 to $42,800, and again increased in March 2010 to $44,100.  (Defs. 56.1, ¶ 21.)[3]   During the relevant time period, Philbin's annual salary was $41,800.  (*Id.*, ¶ 29.)

### b.       Plaintiffs' Primary Duties Directly Related To B&N's General Business Operations

Plaintiffs' work was directly related to B&N's management or general business operations.  29 C.F.R. § 541.201.  The law provides that work directly related to management or general business operations includes personnel management or customer service.  29 C.F.R. § 541.201(b).  Plaintiffs meet this requirement because their primary duty was the day-to-day operation of their respective store.  As outlined in the Job Description, Plaintiffs' duties included, *inter alia*:  (1) responsibility for the entire store and staff when fulfilling the role of the MOD; (2) supervising booksellers, and taking corrective action where needed; (3) observing booksellers at work and monitoring the quality of their customer service; (4) handling and resolving customer complaints; (5) monitoring sales trends and making decisions regarding the store's merchandise orders; (6) monitoring loss prevention; and (7) interviewing prospective employees and drafting and delivering performance reviews of booksellers.  (Defs. 56.1, ¶ 10.)  ASMs also

---

[3]       Trimmer satisfies the New York salary basis test because his salary exceeded $543.75 per week.  12 N.Y.C.R.R. § 142-2.14(c)(4).

"focus booksellers on maximizing sales productivity through multi-channel retailing and providing outstanding customer service."  (*Id*., ¶ 7.)

Plaintiffs testified that the Job Description accurately reflected their day-to-day job duties, with one minor exception.  Trimmer testified that only one bullet point of the Job Description was an inaccurate description of his duties at the Tribeca store – "oversees and monitors the new hire and training process" – as that was conducted off-site.  (*Id*., ¶ 11.) Likewise, Philbin agreed to the accuracy of the Job Description, with the exception of customer service not being reflected on the description.  (*Id.*, ¶ 12.)  Notwithstanding Philbin's insistence that customer service was omitted from the Job Description, she agreed that the first sentence of the Job Description stated the following: "The assistant store manager, ASM, is responsible for the daily operation of the store, ensuring all operations are consistent with our bookselling culture, world class *customer service focus*, and merchandising standards."  (*Id*.) (emphasis added).  Regardless, customer service is an exempt duty.  *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 8 (1st Cir. 1997) (employees responsible for promoting sales and providing customer service met the administrative exemption).

Because Plaintiffs acknowledged the accuracy of the Job Description, which clearly describes duties that are directly related to B&N's management or general business operations, there is no dispute about this factor of the administrative exemption.  *Savage v. UNITE HERE*, 2008 WL 1790402, at *2, 8 (S.D.N.Y. Apr. 17, 2008) (court based its determination that plaintiff's work directly related to management or general business operations based on plaintiff's own deposition testimony regarding her job duties and her admission that the job description accurately portrayed her duties).

c.     **Plaintiffs' Primary Duties Included The Exercise Of Discretion And Independent Judgment On Matters Of Significance**

The ultimate question with regard to this second duties prong is whether Plaintiffs had the ability "to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c).  However, there is no requirement that the employee operate free from oversight.  *Id.*  Further, final decision-making authority is not a prerequisite to a finding of the exercise of discretion.  *Id.* ("[T]he term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."); *see also Dymond v. U.S. Postal Serv.*, 670 F.2d 93, 96 (8th Cir. 1982); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 476 (S.D.N.Y. 2008).  The discretion to make recommendations is sufficient.  29 C.F.R. § 541.202(c) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."); *Savage*, 2008 WL 1790402, at *10 (plaintiff met the requirement of exercising independent judgment even though the plaintiff's decisions or recommendations frequently required supervisor approval).

Discretion and independent judgment is defined as:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.  The term . . . implied that the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance.

29 C.F.R. § 541.201; *see also Lichtman v. Martin's News Shops Mgmt., Inc.*, 81 A.D.3d 696, 699 (2d Dep't 2011) (holding that an office manager, whose duties included, *inter alia*, paying vendors for merchandise, hiring and training staff, purchasing office equipment and supplies, met the administrative exemption requirement).  While Plaintiffs regularly exercised discretion

and independent judgment as ASMs, B&N need only show that their position *included* the

exercise of some discretion and independent judgment.  *See* 29 C.F.R. § 541.200(a)(3); *Hippen v.*

*First Nat'l Bank of Phillipsburg, Kan.*, 1992 WL 73554, at *7 (D. Kan. Mar. 19, 1992) ("the

employee's work need only *include* work requiring the exercise of discretion and independent

judgment, as opposed to *customarily and regularly* exercising such discretion and judgment.")

(emphasis in original).

Furthermore, the DOL's Regulations provide:

> [E]mployees can exercise discretion and independent judgment
> *even if* their decisions or recommendations are reviewed at a higher
> level.  Thus, the term 'discretion and independent judgment' does
> not require that the decisions made by an employee have a finality
> that goes with unlimited authority and a complete absence of
> review.
>
> The decisions made as a result of the exercise of discretion and
> independent judgment may consist of recommendations for action
> rather than the actual taking of action.  The fact that an employees'
> decision may be subject to review and that upon occasion the
> decisions are revised or reversed after review does not mean that
> the employee is not exercising discretion and independent
> judgment.

29 C.F.R. § 541.202(c); *see Klein*, 2013 WL 5761401, at *7 ("the fact that [a plaintiff's]

decisions or recommendations frequently required supervisor approval [do not] render her

actions nondiscretionary"); *see also Dymond*, 670 F.2d at 96 (holding that employees performed

work requiring exercise of discretion and independent judgment where their decisions were

subject to approval or even reversal by management).  Thus, the administrative exemption

applies even in those situations where the employee's discretion in the performance of his or her

duties is constrained by an employer's instructions or industry regulations.  *Bristol-Myers*

*Squibb*, 558 F. Supp. 2d at 476; *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d

Cir.1982) (assistant managers in fast food restaurants exercised discretion sufficient for

managerial exemption even though this performance was "circumscribed by prior instruction" and "detailed guidelines").

Plaintiffs clearly exercised discretion and independent judgment. Plaintiffs' own testimony concerning their duties, as reflected in the Job Description, shows that they exercised discretion and independent judgment in carrying out their daily job responsibilities:

- Plaintiffs testified that the discretion afforded to them was even more expansive during the 40 to 60 percent of each week that they worked as the MOD at their respective store. When serving as the MOD, Plaintiffs bore responsibility for overseeing their entire store. (Defs. 56.1, ¶¶ 14, 23.)

- Plaintiffs supervised every employee in the store, including a Merchandising Manager, a Receiving Manager, a Music Manager, the Café Manager, a Children's Lead Bookseller, Booksellers, a Music Lead Seller, Music Sellers, Receivers, Cashiers, and members of the Maintenance staff. (*Id.*, ¶¶ 16, 25.)

- Plaintiffs had discretion to provide customers with discounts. (*Id.*, ¶¶ 15, 27.)

- Plaintiffs had discretion to resolve customer complaints in accordance with all operational and human resource guidelines. (*Id.*, ¶¶ 15, 27.)

- Plaintiffs made recommendations as to whether to remove unruly customers from the store. (*Id.*, ¶ 15.)

- As the MOD, Plaintiffs carried keys to the store and were responsible for opening and/or closing the store. (*Id.*, ¶¶ 17, 26.)

- Plaintiffs were afforded the discretion of ensuring compliance with all standards of operation and performance, and "reacting immediately and appropriately to all employee, customer or store issues." (*Id.*, ¶ 8.)

- Plaintiffs ran morning meetings with staff and provided recommendations on ways to increase sales and effectively execute tasks as part of their MOD duties. (*Id.*, ¶¶ 18, 26.)

- Plaintiffs resolved employee questions and coached and counseled booksellers. (*Id.*, ¶¶ 20, 28.)

- Plaintiffs provided recommendations as to appropriate corrective disciplinary action for booksellers. (*Id.*, ¶¶ 20, 28.)

- Plaintiffs selected, interviewed and recommended the hiring of new booksellers. (*Id.*, ¶¶ 20, 28.)

- Plaintiffs made recommendations concerning the management of both internal and external loss prevention.  (*Id.*, ¶¶ 15, 27.)

In short, the undisputed evidence demonstrates that Plaintiffs were properly classified as exempt from overtime requirements under the administrative exemption.  Therefore, the Court should dismiss their overtime claims in the Complaint.

2.       **Plaintiffs Were Exempt Under
         The Executive Exemption**

Plaintiffs also were exempt under the executive exemption of the FLSA.  29 U.S.C. § 213(a)(1).  Under the DOL Regulations, Plaintiffs met the executive exemption because (1) they were compensated on a salary basis of at least $455 per week; (2) their primary duty was management of the store in which they were employed; (3) they customarily and regularly directed the work of two or more other employees; and (4) they had the authority to hire or fire other employees, or, at the very least, their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight."  29 C.F.R. § 541.100.

a.       **Plaintiffs Were Compensated On A Salary Basis
         Well In Excess Of $455 Per Week**

Plaintiffs meet the first requirement of the executive exemption under the FLSA because they were compensated on a salary basis exceeding $455 per week.  29 C.F.R. § 541.100.  (*See supra* page 16.)

b.       **Plaintiffs' Primary Duty Was Management**

The executive exemption also requires that the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100.  An employee heads a "customarily recognized

department of subdivision thereof" if he or she is "in charge of and ha[s] as his primary duty the management of a recognized unit which has a continuing function." *Id.* at § 541.104(a).

According to the Job Description, which Trimmer and Philbin both testified to be an accurate reflection of their actual duties, each with a *de minimis* qualification, their primary duty was managing their respective stores. This included:

- Managing the daily operations of the store in partnership with the store manager;

- Serving as the MOD to oversee general store operations and ensure compliance with all standards of operation and performance;

- Supervising employees and assigning tasks by matching bookseller with store needs;

- Actively participating in the execution of recommended recognition programs and providing positive feedback to store employees;

- Coaching and counseling all booksellers to drive sales;

- Resolving employee, customer, or store needs;

- Preparing and delivering performance reviews to booksellers and developing performance plans and goals in partnership with the store manager;

- Planning and appropriating work to optimize payroll budge and to achieve the sales per hour goal while ensuring compliance with store operating procedures;

- Opening and closing the store; and

- Managing theft and loss prevention.

(Defs. 56.1, ¶ 10.)

The duty of managing the store permeated throughout the Job Description of the Plaintiffs, who provided testimony corroborating their managerial duties. *See Walling v. General Industries Co.*, 330 U.S. 545, 549-50 (1947) (holding that plaintiffs' managerial and supervisory duties provided an adequate basis for the court's inference that plaintiffs met the executive exemption under the FLSA). Accordingly, there is no material issue of fact as to this

element of the executive exemption.  *See Donovan,* 675 F.2d at 521 (holding that assistant

managers of a restaurant, who earned the threshold weekly salary and exercised managerial

responsibilities as their "primary duty" by doing non-exempt work over 50 percent of their time,

fell within FLSA's executive exemption); *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp.

2d 115, 119-20 (E.D.N.Y. 2004) (granting summary judgment for employer where evidence

showed that plaintiff's duties were executive in nature, including opening and closing the store,

taking inventory, supervising the staff, and handling the cash drop in the safe).

**c.     Plaintiffs Customarily And Regularly Directed
The Work Of Two Or More B&N Employees**

Similarly, no genuine issue of material fact exists as to whether Plaintiffs customarily

supervised the work of at least two or more employees in their respective stores.  (*See generally*

Defs. 56.1, ¶¶ 16, 25.)  An employee directs the work of employees "customarily and regularly"

if the "frequency [is] greater than occasional but . . . may be less than constant."  29 C.F.R.

§ 541.701.  Plaintiffs were charged with supervising numerous employees working under their

position as the MOD, including Merchandising Managers, Receiving Managers, Music

Managers, Café Managers, Children's Lead Booksellers, Booksellers, Music Lead Sellers, Music

Sellers, Receives, Cashiers, and members of the maintenance staff.  (Defs. 56.1, ¶¶ 16, 25.)

Indeed, in absence of the Store Manager, each Plaintiff, as the ASM and MOD, was the highest

level manager present in the store.  (*Id.*, ¶¶ 14, 23.)  As such, they were "also responsible for the

entire store and staff when fulfilling the role of manager on duty (MOD)."  (*Id.*)  Accordingly,

there is no material factual dispute that plaintiffs regularly and customarily directed the work of

at least two full-time employees.  *Wright v. Monroe County, N.Y.*, 2007 WL 1434793, at *4

(W.D.N.Y. May 14, 2007) (holding that "[r]egardless of [plaintiff's] characterization" of his

sergeant position as "a mid-level management position within the Police Bureau and a lower

23

level management position within the Department as a whole," the facts and job description

showed that he regularly supervised at least two employees and met executive exemption).

> **d.     Plaintiffs Had Authority To Hire Or Fire
> Other Employees And/Or Their Recommendations
> Were Given Particular Weight**

Finally, an employee's recommendations as to hiring, firing, advancement, promotion, or

any other change of status of other employees must be given "particular weight" to be an exempt

executive employee.  29 C.F.R. § 541.100(a)(4).  In order for his or her recommendations to be

given particular weight, an executive employee need not have the authority to actually hire or

fire employees.  *Id.* at § 541.105.

Here, Plaintiffs met the exemption because they made suggestions and recommendations

that were afforded particular weight as to the hiring, firing, advancement, promotion, or any

other status change of employees.  Specifically, their duties included, *inter alia*, interviewing

booksellers, recommending candidates for hire, recommending candidates for termination,

coaching and counseling booksellers on performance issues, and taking appropriate corrective

action.  (Defs. 56.1, ¶¶ 20, 28.)  These undisputed facts show that Plaintiffs were exempt under

the executive exemption.  *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 560, 564 (2d

Cir. 2012) (holding that executive exemption applied to night-shift warehouse captains whose

suggestions and recommendations concerning the hiring, firing, and promotion of pickers were

"given particular weight"); *Kahn*, 331 F. Supp. 2d at 120 (holding that executive exemption

applied to a restaurant employee who was consulted on hiring and firing decisions).

**D.     SHOULD THE COURT DISMISS PLAINTIFFS FLSA CLAIMS, TRIMMER'S
NYLL CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION**

If the Court grants summary judgment as to Plaintiffs' FLSA claims, but not as to

Trimmer's NYLL claim, B&N respectfully requests that the Court dismiss Trimmer's NYLL

claim for lack of jurisdiction. *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 272 (S.D.N.Y. 2006) (declining to exercise supplemental jurisdiction over NYLL claims after dismissing FLSA claims).

## IV. <u>CONCLUSION</u>

For each of the foregoing reasons, B&N respectfully submits that the Court dismiss Plaintiffs' FLSA claims as time-barred. In the event that the Court does not dismiss the FLSA claims as time-barred, it should grant summary judgment in favor of B&N on the grounds that Plaintiffs are not entitled to overtime under the administrative and/or executive exemption.

Dated: New York, New York
      November 25, 2013

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By <u>s/ Edward Cerasia II</u>
   Edward Cerasia II
   Brian J. Gershengorn
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

Attorneys for Defendants