# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**STEVEN TRIMMER on behalf of himself and all others similarly situated,**

**Plaintiff,**

-against-

**BARNES & NOBLE, INC. and BARNES & NOBLE BOOKSELLERS, INC.,**

**Defendants.**

**13 Civ. 00579 (JGK) (SN)**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**FITAPELLI & SCHAFFER, LLP**

Brian S. Schaffer
Frank J. Mazzaferro
Andrew P. Kimble
475 Park Avenue South, 12th Floor
New York, New York 10016
Phone: (212) 300-0375
Fax: (212) 481-1333

*Attorneys for Plaintiff and
the putative class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iv

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

    I.     The Parties ...............................................................................................................2

    II.    Trimmer and Philbin Were Not Compensated for the
            Overtime Hours They Worked .......................................................................2

    III.   Trimmer and Philbin's Primary Duties Involved Serving
            Customers and Other Hourly, Manual Tasks .................................................2

    IV.   Trimmer and Philbin Completed Allegedly "Managerial" Duties Pursuant
            to Strict Guidelines Provided by B&N and Their Store Managers ...........................3

    V.    Trimmer and Philbin's Job Duties and Compensation Were
            Comparable to Their Non-Exempt Co-Workers ....................................................4

    VI.   B&N's Payroll Policies Incentivize the Use of ASMs to
            Complete Hourly Tasks .................................................................................5

    VII.  B&N Recklessly Failed to Monitor Plaintiffs' Exemption Status
            Under the FLSA ..............................................................................................5

ARGUMENT .............................................................................................................................7

    I.     Material Issues of Fact Preclude Summary Judgment For Defendants ...........................7

    II.    B&N's Violations of the FLSA Were Willful, Therefore A Three-Year
            Statute Of Limitations Applies To Plaintiffs' Claims..................................................8

    III.   Plaintiffs Were Misclassified as Exempt From the FLSA ...........................................12

       A.  Plaintiffs Do Not Qualify for the Administrative Exemption .........................................13

          1.   Plaintiffs' Primary Duties Are Not Office or Non-Manual Work Directly
              Related to the Management or General Business Operations of B&N .............13

          2.   Plaintiffs' Primary Duties Did Not Include the Exercise of Discretion and
              Independent Judgment with Respect to Matters of Significance ......................16

i

B.  Plaintiffs Do Not Qualify For the Executive Exemption ...............................................19

   1.  Plaintiffs' Primary Duty Was Not Management ......................................................19

      a.  Plaintiffs Spent the Vast Majority of Their Time Completing
Non-Exempt Work ....................................................................................20

      b.  Plaintiffs Were Regularly Supervised by Their Store
Manager and Corporate Policies ..............................................................21

      c.  Plaintiffs' Non-Exempt Duties Were More Important Than
Their Exempt Duties.................................................................................21

      d.  Plaintiffs' Effective Wage Were Less Than Their
Non-Exempt Co-Workers..........................................................................22

   2.  Plaintiffs' Did Not Have the Authority to Hire or Fire .............................................24

CONCLUSION .........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>.............................................................................................................**Page Number**

*Ale v. TVA,*
   269 F.3d 680 (6th Cir. 2001) ............................................................................... 22

*Ayres v. 127 Rest. Corp.,*
   12 F. Supp. 2d 305 (S.D.N.Y. 1998)............................................................... 8, 9

*Bobadilla v. MDRC,*
   No. 03 Civ. 9217 (JGK), 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ...................................7

*Callari v. Blackman Plumbing Supply Inc.,*
   No. 11 Civ. 3655 (ADS)(AKT), 2013 WL 6795911 (S.D.N.Y. Dec. 19, 2013) .............. *passim*

*Carhuapoma v. New York-Presbyterian Healthcare System, Inc.,*
   No. 11 Civ. 8670 (JPO)(RLE), 2013 WL 1285295 (S.D.N.Y. Mar. 29, 2013)...... 12, 15, 21, 22

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)............................................................................................7

*Chambers v. TRM Copy Ctrs. Corp.,*
   43 F.3d 29 (2d Cir. 1994) ...................................................................................7

*Christopher v. SmithKline Beecham Corp.,*
   132 S.Ct. 2156 (2012)......................................................................................12

*Clarke v. JP Morgan Chase,*
   No. 08 Civ. 2400 (CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ................... 9, 10

*Clougher v. Home Depot U.S.A., Inc.,*
   696 F. Supp. 2d 285 (E.D.N.Y. 2010) ....................................................... 12, 21, 22

*Cohen v. Gerson Lehrman Grp., Inc.,*
   686 F. Supp. 2d 317 (S.D.N.Y. 2010)..............................................................15

*Corning Glass Works v. Brennan,*
   417 U.S. 188 (1974)........................................................................................12

*Costello v. Home Depot,*
   928 F. Supp. 2d 473 (D. Conn. 2013))........................................................... *passim*

*Davis v. J.P. Morgan Chase,*
   587 F.3d 529 (2d Cir. 2009)............................................................................ 14

*Difilippo v. Barclays Capital, Inc.*,
   552 F. Supp. 2d 417 (S.D.N.Y. 2008) ..................................................................... 8, 9, 11, 17

*Gallo v. Prudential Residential Servs. Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994) ....................................................................................... 7

*Gustafson v. Bell Atlantic Corp.*,
   171 F. Supp. 2d 311 (S.D.N.Y. 2001) ...................................................................... 10

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999) ....................................................................................... 8

*Indergit v. Rite Aid Corp.*,
   No. 08 Civ. 9361 (PGG), 2010 WL 1327242 (S.D.N.Y. Mar. 31, 2010) .................... 13, 20, 21

*Kadden v. Visualex, LLC*,
   910 F. Supp. 2d 523 (S.D.N.Y. 2012) ..................................................................... 12, 14

*Kaur v. Royal Arcadia Palace, Inc.*,
   643 F.Supp.2d 276, 294 (E.D.N.Y. 2007) ................................................................. 8

*Martinez v. Hilton Hotels Corp.*,
   930 F. Supp. 2d 508 (S.D.N.Y. 2013) ..................................................................... 20, 22, 24, 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................... 7

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) .................................................................................................... 8

*Moon v. Kwon*,
   248 F. Supp. 2d 201 (S.D.N.Y. 2002) ....................................................................... 8

*Mullins v. City of New York*,
   653 F.3d 104 (2d Cir. 2011) ....................................................................................... 13, 19

*In re Novartis Wage and Hour Litigation*,
   611 F.3d 141 (2d Cir. 2010) ....................................................................................... 12, 16, 17

*Pollis v. New Sch. For Soc. Research*,
   132 F.3d 115 (2d Cir. 1997) ....................................................................................... 9

*Ramirez v. Rifkin*,
   568 F. Supp. 2d 262 (E.D.N.Y. 2008) ....................................................................... 8

*Relyea v. Carman, Callahan & Ingham, LLP,*
   No. 03 Civ. 5580 (DRH)(MLO), 2006 WL 2577829 (E.D.N.Y. 2006) ................................... 14

*Rubery v. Buth-Na-Bodhaige, Inc.,*
   470 F. Supp. 2d 273 (W.D.N.Y. 2007) ...................................................................................... 12

*Solis v. Gen. Interior Sys., Inc.,*
   No. 08 Civ. 0823 (NPM)(ATB), 2012 WL 1987139 (N.D.N.Y. June 1, 2012) .......... 8, 9, 11-12

*Yourman v. Dinkins*,
   865 F.Supp. 154 (S.D.N.Y. 1994) ............................................................................................. 10

**Statutes & Regulations** ................................................................................**Page Number**

29 U.S.C. § 255(a) ................................................................................................................................ 8

29 C.F.R. § 541.100(a)(2) ................................................................................................................... 19

29 C.F.R. § 541.2 .......................................................................................................................... 10-11

29 C.F.R. § 541.200(a)(2) ................................................................................................................... 13

29 C.F.R. § 541.200(a)(3) .............................................................................................................. 13, 16

29 C.F.R. § 541.202(e) ........................................................................................................................ 16

29 C.F.R. § 541.205(a) ........................................................................................................................ 14

29 C.F.R. § 541.700(a) .................................................................................................................. *passim*

29 C.F.R. § 541.700(c) ........................................................................................................................ 20

29 C.F.R. § 578(c)(3) ......................................................................................................................... 1, 9

Fed. R. Civ. P. 56 .................................................................................................................................. 1

Fed. R. Civ. P. 56(c) .............................................................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff Steven Trimmer and Opt-In Plaintiff Eileen Philbin ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Barnes & Noble, Inc. and Barnes & Noble Booksellers, Inc.'s ("Defendants" or "B&N") motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Defendants have failed to eliminate all genuine issues of material fact as to Plaintiffs' Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims.  Despite Defendants' contentions, B&N's FLSA violations were willful, as the company "should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."  29 C.F.R. 578.3(c)(3).  Discovery has shown that Defendants failed to consult with their in-house attorneys or make any inquiry whatsoever into the exemption status of 1,200 of its Assistant Store Managers ("ASMs") throughout the time period relevant to this action, January 2007 to July 1, 2010.  As such, Plaintiffs' claim should be subject to a three-year statute of limitations.

Additionally, discovery has shown that several genuine issues of material fact exist as to whether Plaintiffs were properly classified as exempt from the FLSA's overtime requirements. First, Plaintiffs spent the vast majority of their time completing manual "hourly" tasks, such as providing customer service, operating the cash register, stocking shelves, and assisting in the cafe.   These duties constituted Plaintiffs' primary duties. Second, Plaintiffs did not exercise discretion and independent judgment with regard to matters of significance because they were required to adhere to Defendants' immutable corporate policies and Store Manager directives. As such, there are genuine issues of material fact as to whether Plaintiffs were properly classified under the administrative and/or executive exemptions of the FLSA.

**STATEMENT OF FACTS**

**I.       The Parties**

B&N, one of the nation's largest booksellers, controls and operates over 1,338 bookstores nationwide.  Plaintiffs' Local Rule 56.1 Counterstatement of Material Facts ("Pl. 56.1") ¶ 43. For the fiscal year 2012, B&N's consolidated revenues were $7.1 billion and their Retail segment's sales were nearly $4.85 billion.  As of 2010, B&N employed approximately 1,200 ASMs.  Id. at ¶ 44.

Plaintiff Steven Trimmer worked for Defendants as an ASM at the B&N Tribeca store located in New York City from October 2007 to January 8, 2013.  Id. at ¶ 1.  Opt-In Plaintiff Eileen Philbin has worked for Defendants since 1994, and has been an ASM at the B&N store in Chesapeake, Virginia since approximately June of 1996.  Id. at ¶ 2.

**II.      Trimmer and Philbin Were Not Compensated for the Overtime Hours They Worked**

Plaintiffs were classified as exempt from the overtime requirements of the FLSA from October 2007 to July 1, 2010.[1]  Pl. 56.1 at ¶ 5.  Plaintiffs consistently worked approximately 45-50 hours per workweek, and were required to work even longer hours during busy periods: November through January, Mother's Day, Father's Day, Easter, and for various company initiatives.  Id. at ¶¶ 45-46.

**III.     Trimmer and Philbin's Primary Duties Involved Serving Customers and Other Hourly, Manual Tasks**

Trimmer and Philbin both spent the vast majority of their time – approximately 80% and 90%, respectively – completing hourly duties alongside their non-exempt co-workers.  Pl. 56.1 ¶¶ 48, 52-53.  In that regard, they assisted customers in finding merchandise, operated the cash

---

[1] Unless otherwise stated, the Statement of Facts refers to January 2007 to July 1, 2010.

registers, stocked shelves, assisted in the café, cleaned, and completed various other tasks dictated by B&N and by the Store Manager. Id. at ¶¶ 52-53.

The evidence shows that the ASM job description was not an accurate reflection of Plaintiffs' job duties. Id. at ¶ 7-12, 48-51. For example, the job description does not make a single reference to ASMs actually completing hourly tasks, but Plaintiffs *and* B&N's witnesses testified that Plaintiffs and other ASMs did complete such tasks. Id. at ¶¶ 48, 50. Also, while Plaintiffs acknowledge they completed many of the purportedly "managerial" duties listed on the job description, those duties occupied only a small fraction of their time at work. Id. at ¶ 52-53. As Philbin explained, the job description is not accurate "[b]ecause it does not, I feel, include the most important job is that of the bookseller focusing on customer service, cashiering." Id. at ¶ 12.

## IV.    Trimmer and Philbin Completed Allegedly "Managerial" Duties Pursuant to Strict Guidelines Provided by B&N and Their Store Managers

As ASMs, Plaintiffs' discretion and independent judgment was closely circumscribed by B&N corporate policies and rules set by their Store Managers. See Pl. 56.1 ¶¶ 63-79. Plaintiffs were trained on and required to adhere to Integrated Store Operations ("ISO"), which were corporate-created rules regarding daily operations that applied to all stores nationwide. Id. at ¶ 63-64. ISO included numerous operations requirements that Plaintiffs could not deviate from, such as SPH and staffing matrix requirements, Visual Merchandising Standards, Floor Optimization requirements, Zone Maintenance Standards, Workload Planning, e-Planner, the Daily Assignment Sheet, and various checklists and reference documents that precluded Plaintiffs from exercising any discretion with regard to store operations. Id. at ¶¶ 65-73. Store-level adjustments to these policies were made by the Store Manager or District Manager, not ASMs. Id. at ¶¶ 67, 70.

Defendants rely heavily on the fact that Plaintiffs served as Manager on Duty ("MOD") of their respective stores for part of their time at work. However, even when serving as MOD, Plaintiffs were required to consult with their Store Managers before taking nearly any action, such as disciplining employees, dealing with unruly customers, handling loss prevention issues, or issuing discounts or refunds outside of set corporate policies. Id. at ¶¶ 15, 20, 27-28, 52-53, 73-78. MODs were guided by various checklists and the above-referenced corporate programs. Id. at ¶ 73. Also, as Bottini explained, as MOD, Plaintiffs were regularly required to complete hourly duties throughout the store. Id. at ¶ 14-15, 22-23, 52-54.

## V.      Trimmer and Philbin's Job Duties and Compensation Were Comparable to Their Non-Exempt Co-Workers

All of the arguably "managerial" duties completed by Plaintiffs were also completed by their non-exempt co-workers. Pl. 56.1 ¶¶ 80-86. Merchandise Managers and Receiving Managers were, at all relevant times, non-exempt employees authorized to assign work to employees, interview and recommend employees for hire, prepare and deliver performance reviews, and discipline employees. Id. at ¶¶ 80, 84-85. Merchandise Managers also served as the MOD, trained employees, recommended termination, carried keys to the store, and held the same loss prevention responsibilities as Plaintiffs. Id. at ¶¶ 81-83. Finally, numerous non-exempt employees were also authorized to issue discounts and returns. Id. at ¶ 86.

More importantly, because they were paid the same salary no matter how many hours they worked, Plaintiffs were paid a lower effective hourly rate than their non-exempt co-workers at the Tribeca and Chesapeake stores during the relevant time period. Id. at ¶¶ 87-95. At Tribeca, Janet Cassidy and Jennie Susan Kiefer – two non-exempt Merchandise Managers – were paid a higher effective hourly rate than Trimmer. Id. at ¶¶ 87-91. At Chesapeake, non-exempt Merchandise Manager William Ayres was paid a higher effective hourly rate than

- 4 -

Philbin.  Id. at ¶¶ 92-95.  Conversely, both Plaintiffs were paid significantly less than their respective Store Managers.  Id. at ¶¶ 90-91, 94-95.

## VI.   B&N's Payroll Policies Incentivize the Use of ASMs to Complete Hourly Tasks

B&N payroll policies incentivized the use of exempt ASMs to complete hourly tasks not listed on their job description.  Sales per Hour, or SPH, was a corporate formula that calculated the amount of sales a store made in an hour, and, from that number, dictated the number of bookseller hours that each store could schedule each week.  Pl. 56.1 ¶ 58.  B&N's evaluations of their stores relied heavily on whether the store met payroll and SPH goals.  Id. at ¶ 60.  As such, because the hours worked by ASMs did not influence SPH one way or the other, Store Managers regularly required Plaintiffs and other ASMs to complete hourly tasks instead of staffing hourly employees to complete them.  Id. at ¶¶ 59-62.

## VII.   B&N Recklessly Failed to Monitor Plaintiffs' Exemption Status Under the FLSA

B&N recklessly failed to monitor Plaintiffs' exemption status under the FLSA. Defendants' witnesses were unable to provide any information regarding the process by which B&N originally classified ASMs as exempt over twenty years ago.  Pl. 56.1 ¶ 96.  However, both Vice President of Human Resources Michelle Smith ("Smith") and Director of Stores Mark Bottini ("Bottini") testified that no analysis of ASMs' job classification was conducted between 2007 and June 2010 to determine if they were properly classified as exempt.  Id. at ¶ 101. Throughout this time, despite having at least three attorneys on its payroll, B&N neglected to have any in-house attorneys evaluate the ASM exemption classification.  Id. at ¶¶ 30, 32, 38, 97-100.  Moreover, despite their substantial resources, B&N also failed to consult with an outside attorney to evaluate ASM exemption status.  Id. at ¶ 38, 97-100.

Instead, Smith and Bottini were responsible for ensuring that one of the nation's largest booksellers was in compliance with the FLSA. Id. at ¶ 30. During depositions, both Smith and Bottini showed that they were not qualified to make such exemption decisions. Smith testified that she has a "general" understanding of the FLSA "from an HR perspective." Id. at ¶ 32. Her testimony established that she "[does not] know specifics" with regard to how courts have analyzed the exemptions. Id. She testified that she has "no idea" how the discretion and independent judgment prong of the administrative exemption has been analyzed by the courts, and was not aware of how the "primary duty" requirement is analyzed. Id. The other decision maker, Bottini, admitted that he is "certainly not an expert in [the FLSA]." Id. at ¶ 34.

When asked why B&N did not ask for input from their legal staff as to the ASM exemption classification, Smith stated simply that it "wasn't necessary." Id. at ¶ 38. However, Smith and Bottini relied solely on the ASM job description to determine the exemption status of ASMs, and did not inquire into the actual duties performed by ASMs on a day to day basis. Id. at ¶¶ 38, 48, 103. As discussed above, the job description was not an accurate representation of Plaintiffs' day-to-day duties as ASMs. Id. at ¶ 7-12, 48-51.

Defendants' were aware that their monitoring of the ASM exemption status was inadequate. In her deposition, Smith stated that "most ASMs" could still be classified as exempt today, suggesting that she was aware the analysis should be based on actual job duties, rather than the contents of a job description. Id. at ¶ 105. Also, in 2005, Defendants were placed on notice of potential wage and hour violations when they were sued for overtime violations by ASMs in California. Id. at ¶ 106. In response to that lawsuit, B&N reclassified California ASMs as non-exempt. However, inexplicably, there is no evidence that B&N conducted any analysis of ASM job duties outside of California. Id. Finally, despite Defendants' contentions, B&N was

on notice of potential violations after Trimmer complained to his Store Manager on various occasions because the tasks he was being required to complete were non-managerial, such as operating the cash register and working in the café.  Id. at ¶¶ 6, 107.

## ARGUMENT

### I.    Material Issues of Fact Preclude Summary Judgment For Defendants

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bobadilla v. MDRC*, No. 03 Civ. 9217 (JGK), 2005 WL 2044938, *1 (S.D.N.Y. Aug. 24, 2005) (Koeltl, J) (*citing* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994)). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.   B&N's Violations of the FLSA Were Willful, Therefore A Three-Year Statute Of Limitations Applies To Plaintiffs' Claims

Plaintiffs' FLSA claims should be subject to a three-year statute of limitations because Defendants' violations of the FLSA were "willful."  *See* 29 U.S.C. § 255(a).  An employer has committed a "willful" violation of the FLSA where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute [*i.e.*, the FLSA] . . . ."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

"Courts in this Circuit have generally left the question of willfulness to the trier of fact." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases); *see also, e.g.*, *Difilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417 (S.D.N.Y. 2008) (denying defendants' motion for summary judgment where classification decision was made by managers and Human Resources personnel); *Kaur v. Royal Arcadia Palace, Inc.,* 643 F.Supp.2d 276, 294 (E.D.N.Y. 2007) (concluding that "[w]hether Defendants acted willfully in violating the FLSA [was] a question of fact for the jury" because plaintiffs adduced evidenced that they complained ); *Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) (finding defendants' violations to be willful after bench trial); *Ayres v. 127 Rest. Corp.,* 12 F. Supp. 2d 305, 309 (S.D.N.Y.1998) (finding defendant acted recklessly because it offered no evidence that it actually reviewed its own employment policies, made relevant inquiries into the applicable law, or relied on the advice of counsel); *Solis v. Gen. Interior Sys., Inc.*, No. 08 Civ. 0823 (NPM)(ATB), 2012 WL 1987139 (N.D.N.Y. June 1, 2012) ("It is clear that a passive/reactive approach on the part of a defendant-employer will not preclude a plaintiff from seeking a three-year statute of limitations pursuant to a defendant's alleged willfulness.").

To establish willfulness, Plaintiffs need not show that Defendants had actual knowledge of its FLSA violations or that it "acted with intent to discriminate or in bad faith." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (citation omitted).  Instead, according to the Department of Labor regulations, an employer will be deemed to have recklessly disregarded the statute if it "should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."  29 C.F.R. § 578.3(c)(3). "A failure to make inquiries into the relevant law or seek legal counsel regarding compliance with the FLSA may be enough to establish willfulness under the Act such that a three year statute of limitations applies."  *Solis,* 2012 WL 1987139, *5 (*citing Difilippo*, 552 F. Supp. 2d at 425); *see also Ayres*, 12 F. Supp. 2d at 309-10 (defendants motion for summary judgment on willfulness was denied because defendants presented no evidence that they relied on the advice of counsel to determine the lawfulness of plaintiffs' compensation).

In *Difillipo*, the court denied defendants' motion for summary judgment, explaining that an employer may have acted willfully "if it is familiar with the FLSA and has knowledge that at least one of its employees is not compensated for overtime pay but makes no effort to seek legal advice on the issue."  552 F. Supp. 2d at 425.  There, as here, the task of ensuring compliance with the FLSA fell to non-lawyers, who failed to utilize attorneys employed by the company or seek outside legal counsel to review the classification of the relevant job position.  *Id.*

The primary case relied upon by Defendants, *Clarke v. JP Morgan Chase*, is easily distinguishable from the present case.  In *Clarke*, the court notes that the plaintiff "reference[d] only *one* fact in support of his contention that the three-year limitations period should apply: his reclassification in 2005 as overtime eligible." No. 08 Civ. 2400 (CM)(DCF), 2010 WL 1379778, *12 (S.D.N.Y. Mar. 26, 2010) (emphasis in original).  The court further observed that "[a]s a

normal practice, JPM periodically reviews the exempt status of its jobs to ensure that they are classified consistent with FLSA overtime requirements." *Id*. at *2. Also, importantly, the *Clarke* defendant undertook this exemption review "*under the direction of its legal department.*" **Ex. S[2]**, Declaration of Courtney Smith Goodrich, ¶ 14, Docket # 57, 2010 WL 1379778 (emphasis added). Conversely, the Plaintiffs in the present case do not rely on their reclassification in attempting to establish willfulness; instead, they point to B&N's reckless disregard of Plaintiffs' classification from 2007 to June 2010, when the company refused to even consult with one of their staff attorneys to analyze the exempt status of ASMs.

The other cases cited by Defendants are likewise inapplicable. In *Gustafson v. Bell Atlantic Corp.*, a chauffeur who was classified as an independent contractor was unable to prove willfulness, as he "merely concluded that willfulness and recklessness existed, without pointing to any concrete evidence in the record." 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001). Also, unlike B&N, Bell Atlantic presented evidence that its legal department was involved in drafting the independent contractor agreements that controlled plaintiff's employment. *Id*. at 317. In *Yourman v. Dinkins*, the court found that the City of New York had undertaken an assessment of whether their pay practices complied with the FLSA, with the City Law Department and outside counsel centrally involved. *Yourman v. Dinkins*, 865 F. Supp. 154, 159 (S.D.N.Y. 1994).

Had B&N consulted their in-house attorneys or outside counsel, they would have learned that an employee's FLSA exemption status is determined by reference to an his or her actual job duties, not characterizations of those job duties in job descriptions created by their employer. 29 C.F.R. § 541.2. Instead of analyzing ASM job duties, Smith and Bottini made their exemption decisions only by reference to the ASM job description. Pl. 56.1 ¶¶ 36, 103.

---

[2] All Exhibits are attached to the Declaration of Brian Schaffer.

Furthermore, like the *Difillipo* defendants, B&N was on notice that Plaintiffs' classification was "potentially erroneous" because other similar employees were classified as non-exempt. *Difillipo,* 552 F. Supp. 2d at 425. First, in 2005, a lawsuit was filed on behalf of B&N ASMs in California. Pl. 56.1 ¶ 106. In the aftermath of the lawsuit, B&N apparently conducted an analysis of California ASMs and decided to reclassify them as non-exempt from the FLSA. Id. However, there is no indication that they also analyzed the ASMs in the other 49 states. Id. Second, B&N was aware that Merchandise Managers – who completed nearly all of the same duties as ASMs – were classified as non-exempt throughout the relevant time period. Id. at ¶¶ 80-86. Third, Smith acknowledged at her deposition that she believed "most ASMs" could still be classified as exempt, suggesting that she was aware that actual duties, not job descriptions, are relevant to exemption analysis and, therefore, Defendants' analysis was insufficient. Id. at ¶ 105. Finally, Trimmer complained to his Store Managers on various occasions because he felt the tasks he was being required to complete were the same as non-exempt employees. Id. at ¶ 6, 107. B&N cannot claim that they were not on notice that the ASM job classification was "potentially erroneous." *Difillipo,* 552 F. Supp. 2d at 425.

B&N is not a small "mom and pop" bookstore that did not have the knowledge or resources to comply with their obligations under the FLSA. They employed a full-time legal team. Pl. 56.1 ¶ 38, 97. Still, they refused to even have a conversation with any attorneys regarding the ASM job classification, or conduct any analysis whatsoever into ASMs' actual job duties. Id. at ¶¶ 38, 97-101. B&N's "passive/reactive approach" constituted willful disregard of their obligations under the FLSA. *Solis*, 2012 WL 1987139, at *5. As such, Defendants have failed to eliminate all issues of material fact as to whether their FLSA violations were willful.

III.     **Plaintiffs Were Misclassified as Exempt From the FLSA**

Defendants have failed to meet their burden of establishing that no issues of material fact exist as to whether Plaintiffs qualified for the administrative and/or executive exemptions of the FLSA prior to July 1, 2010.  Defendants' motion neglects to mention that it is the employer's burden to prove its employees fall within an exempt category of the FLSA. *See e.g., Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Kadden v. Visualex, LLC*, 910 F. Supp. 2d 523, 533 (S.D.N.Y. 2012).   Because the FLSA is a "remedial law," exemptions to the overtime pay requirement are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 150 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012).  As such, since the determination of whether an employee is exempt from the overtime provisions of the FLSA is a "fact intensive inquiry," courts are often reluctant to grant summary judgment to defendants.  *Carhuapoma v. New York-Presbyterian Healthcare System, Inc.*, No. 11 Civ. 8670 (JPO)(RLE), 2013 WL 1285295, at *7 (S.D.N.Y. Mar. 29, 2013).

With respect to assistant managers in retail establishments, courts in this circuit have been reluctant to grant summary judgment to employers on the issue of FLSA exemptions.  *See Clougher v. Home Depot U.S.A., Inc.,* 696 F. Supp. 2d 285, 290 (E.D.N.Y.2010) (denying summary judgment in case involving Home Depot assistant managers who completed some managerial duties, including serving as "MOD"); *Costello v. Home Depot*, 928 F. Supp. 2d 473, 495 (D. Conn. 2013) (same); *Callari v. Blackman Plumbing Supply Inc.*, No. 11 Civ. 3655 (ADS)(AKT), 2013 WL 6795911, *19 (S.D.N.Y. Dec. 19, 2013) (summary judgment denied as to assistant manager who held some supervisory duties, opened and closed the store, knew the

store's alarm code, handled customer returns, and coached salespeople, but his primary duty was sales); *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273 (W.D.N.Y. 2007) (court found material issues of fact as to whether plaintiff's primary job responsibilities were considered "management"); *see also Indergit v. Rite Aid Corp.,* No. 08 Civ. 9361 (PGG), 2010 WL 1327242, at *6 (S.D.N.Y. Mar. 31, 2010) (denying defendants' motion for summary judgment in case involving a Rite Aid store manager, the highest ranking person in the store).

### A.  Plaintiffs Do Not Qualify for the Administrative Exemption

Defendants have failed to eliminate all issues of material fact as to (1) whether Plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of B&N; and (2) whether Plaintiffs' primary duty included the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a)(2)-(3).  To determine whether a plaintiff's performance of exempt activities constitutes their "primary duty," a court must consider "the character of an employee's job as a whole."   *Mullins v. City of New York*, 653 F.3d 104, 106 (2d Cir. 2011) (citing 29 C.F.R. § 541.700(a)).  As evidenced below, Defendants are not entitled to summary judgment based on the administrative exemption.

### 1.  Plaintiffs' Primary Duties Are Not Office or Non-Manual Work Directly Related to the Management or General Business Operations of B&N

Defendants have not established that Plaintiffs qualified for the administrative exemption because the evidence indicates that they were not primarily engaged in office or non-manual work directly related to the management or general business operations of the employer.  *See* 29 C.F.R. § 541.200(a)(2).  Rather, Plaintiffs testified that their primary duties involved customer service, operating the cash register, stocking shelves, and assisting in the café.

- 13 -

According to the Second Circuit, an employee who qualifies for the administrative exemption participates in "the running of the business, and not merely the day-to-day carrying out of its affairs." *Davis v. J.P. Morgan Chase*, 587 F.3d 529, 535 (2d Cir. 2009) (internal citations omitted) (reversing grant of summary judgment to defendants pursuant to the administrative exemption). Work directly related to management policies or general business operations consists of "those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a); *see also Kadden*, 910 F. Supp. 2d at 535 (finding administrative exemption did not apply following a bench trial because plaintiff was a "production employee").

In *Callari v. Blackman Plumbing Supply, Inc*., an assistant manager successfully defeated defendants' motion for summary judgment based on the administrative exemption because issues of fact existed as to whether his primary duty was sales. *Callari*, 2013 WL 6795911, *21. Here, Plaintiffs testified that their primary duties included bookselling, customer service, running cash registers, and completing other "hourly" duties. Pl. 56.1 ¶¶ 52-53. In this way, ASMs were "production" employees, as it was their job "to generate (i.e. "produce") the very product or service that the employer's business offers to the public." *Kadden,* 910 F. Supp. 2d at 535.

Furthermore, like the plaintiffs in *Davis*, Plaintiffs performed work that was "primarily functional rather than conceptual." *Davis*, 587 F.3d at 535. Plaintiffs did not formulate B&N operations policy, "[r]ather, they were trained only to apply the [policies] as they found [them], as [they were] articulated to them" by corporate and their Store Managers. *Id*.; *see also Relyea v. Carman, Callahan & Ingham, LLP,* No. 03 Civ. 5580 (DRH)(MLO), 2006 WL 2577829, at *5 (E.D.N.Y.2006) ("Plaintiffs applied existing policies and procedures on a case-by-case basis. Their duties do not involve the crafting of those policies, but rather the application of those

policies.  As a result, Plaintiffs are better described as 'production,' rather than 'administrative' workers, and they are not exempt from FLSA.").

Finally, summary judgment is inappropriate where, as here, plaintiffs assert that any administrative duties they may have performed occupied only a small fraction of their time at work.  Pl. 56.1 ¶¶ 52-53; *Carhuapoma*, 2013 WL 1285295, *14 (denying summary judgment on the administrative exemption where plaintiff did complete some administrative functions, because there was "little evidence in the record that these administrative functions, rather than the production of the Hospital's food services, constituted his primary duty."); *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 329 (S.D.N.Y. 2010) ("It is, indeed, the case that, in a service-industry setting, the determination of whether an employee's responsibilities fall within the 'administrative' or 'production' category will often require a fact-intensive analysis of employee functions.").  Plaintiffs spent the majority of their time at work completing hourly tasks that did not relate to the management or general business operations or B&N.  Pl. 56.1 ¶¶ 52-53.  Defendants' have offered no firsthand evidence to refute Plaintiffs' testimony regarding the job duties they actually performed.  See Defendants' Motion ("Def. Mot."), p. 16-17; 29 C.F.R. § 541.2; *Carhuapoma*, 2013 WL 1285295, n. 3.  Despite Defendants' reliance on the job description, the record makes clear that the job description was not an accurate reflection of Plaintiffs' job duties.  Pl. 56.1 ¶ 7-12, 48-53, 103.  Issues of material fact exist as to whether Plaintiffs' primary duties were directly related to the management or general business operations.

### 2. Plaintiffs' Primary Duties Did Not Include the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance

Summary judgment should be denied because Defendants have failed to establish that Plaintiffs' primary duties involved the exercise of discretion and independent judgment.  First, Defendants misstate the discretion and independent judgment requirement of the administrative

exemption.  According to Defendants, they need only establish that the ASM position "*included the exercise of some discretion and independent judgment.*"  See Def. Mot. p. 18-19.  The case Defendants cite for this proposition interpreted a version of the DOL regulations that has since been amended.  The current regulations, as of April 20, 2004, state that employees are exempt from the FLSA if their "*primary duty* includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3) (emphasis added).

The DOL has explained that "the exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e); *see Novartis*, 611 F.3d at 156.  In *Novartis*, the Second Circuit adopted the DOL's position, holding that Pharmaceutical Sales Representatives did not meet the administrative exemption because plaintiffs' discretion was exercised "within severe limits by Novartis." *Id*. at 157.  Analogous to the *Novartis* case, Plaintiffs here:

- were not involved in the planning of the business' long or short term objectives;

- could not formulate, effect, implement, or interpret the B&N's management policies or operating practices;

- did not carry out major assignments that affected B&N's business operations;

- did not have authority to commit B&N in matters that have a significant financial impact; and

- did not have authority to waive or deviate from established policies and procedures without its prior approval.

*Id*. at 156; *see also Difilippo*, 552 F. Supp. 2d at 425 (denying defendants' motion for summary judgment because "although the analyst position required skill, it was skill closely associated with following settled procedures which closely proscribed limits to determine the correct response to an inquiry or set of circumstances.") (internal quotations omitted); *Callari*, 2013 WL

6795911, at *21 (denying summary judgment where employer and assistant manager disagreed about "how much discretion and decision-making authority the Plaintiff had and how much he had to defer to the manager of the Mineola branch concerning matters of significance.").

Defendants have not provided any examples of Plaintiffs being involved in the planning of the business' long and short term objectives.  Sales and payroll goals are created at the corporate level, and are based on formulas that are applied to all stores nationwide. Pl. 56.1 ¶¶ 63, 65.  Each day, Plaintiffs' stores received an e-Planner message from corporate that dictated new initiatives, and also the tasks to be completed that day in the store.  Id. at ¶ 71.  In addition to e-Planner, Defendants have implemented a myriad of corporate programs – such as Integrated Store Operations, Sales Per Hour, Visual Merchandising Standards, Floor Optimization Requirements, Zone Maintenance Standards, the Daily Assignment Sheet, Workload Planning, and e-Planner – in all of their stores nationwide, which are designed to circumscribe the discretion of Plaintiffs and other ASMs.  Id. at ¶¶ 63-78.  These corporate programs – not the ASMs – dictated what tasks needed to be completed in the store, how each task was to be completed, and how to handle employee performance and discipline issues.

Plaintiffs play no role whatsoever in formulating these policies and procedures.  Id. at ¶ 76.  The policies are created by corporate, through the Operations Department.  Id. Store-level modifications to these programs were made by the Store Manager and the District Manager only. Id. at ¶¶ 67, 70, 78.  Plaintiffs simply carried out well-established practices created by others.

There is no indication that Plaintiffs completed any "major assignments" that affected business operations or made commitments having a significant financial impact. When asked how Plaintiffs' might commit B&N in matters that have a significant financial impact, Smith suggested only that Plaintiffs could give a discount to an institutional client, such as a

school.  Id. at ¶ 79.  However, Defendants offer no evidence that either Trimmer or Philbin ever made a sale to an institutional client or completed any other major assignment.  Furthermore, even in this example, Smith explained that B&N policy only allows discounts of between 5% and 15% for such institutional clients, and that Plaintiffs could not deviate from this policy.  Id.

Finally, Plaintiffs were not free to deviate from established policies without prior approval.  In that regard, whether or not their Store Manager was in the store, Plaintiffs were required to consult with their Store Manager before asking any unruly customers to leave, disciplining an employee, or deviating from any other corporate policy.  Id. at ¶¶ 13, 20, 27-28, 63-78.  With respect to employees Plaintiffs allegedly supervised, Plaintiffs ensured that employees were completing the tasks assigned to them by e-Planner and Workload Planning, and often worked alongside them to complete these tasks.  Id. at ¶¶ 15, 20, 70-71.  B&N provided checklists for daily operations, close guidelines for interviewing and reviewing, and required ASMs' work to be reviewed by their Store Managers.  Id. at ¶ 73-74.  Despite Defendants' contentions, Trimmer could not "recommend" termination, but instead was tasked to review time cards and notify the Store Manager if any employees had violated the attendance policy.  Id. at ¶ 15.  Even with respect to loss prevention, Plaintiffs were responsible only for completing an incident report and notifying the Store Manager or District Manager.  Id. at ¶¶ 15, 27.  Plaintiffs did not have the discretion to call the police prior to speaking with their Store Manager or District Manager.  Id. at ¶ 27.  Smith acknowledged at her deposition that Plaintiffs were not free to waive or deviate from the procedures established by B&N without prior approval.  Id. at ¶ 58, 65, 74, 79.

Consequently, Defendants have failed to carry their burden of eliminating all issues of material fact as to whether Plaintiffs' primary duties included the exercise of discretion and independent judgment with respect to matters of significance.

### B.  Plaintiffs Do Not Qualify For the Executive Exemption

Defendants are not entitled to summary judgment pursuant to the executive exemption because they have not established (1) that Plaintiffs' primary duty was management of the enterprise or of a customarily recognized department or subdivision thereof, or (2) that ASMs had the authority to hire or fire other employees or that their suggestions as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a)(2), (4); *see Mullins*, 653 F.3d at 114-15.

### 1.     Plaintiffs' Primary Duty Was Not Management

The DOL regulations define "primary duty" as "[t]he principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).  To determine an employee's primary duty, the DOL directs employers to consider (1) the amount of time spent on exempt versus non-exempt work; (2) the employee's relative freedom from direct supervision; (3) the relative importance of the exempt duties as compared with the employee's other duties; and (4) the difference between the employee's salary and the pay typically offered for the types of non-exempt work performed by the employee. *Id.*

Specifically with regarding to assistant managers in retail establishments, the DOL has offered the following guidance:

assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c). Here, Plaintiffs spend the vast majority of their time completing non-exempt tasks, are closely supervised by their Store Managers and corporate policies, and often earned *less* than their non-exempt co-workers.

### a.   Plaintiffs Spent the Vast Majority of Their Time Completing Non-Exempt Work

The amount of time an employee spends doing exempt versus non-exempt work is an important factor in determining whether the employee qualifies under the executive exemption to the FLSA. *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 524 (S.D.N.Y. 2013). Here, Plaintiffs spent 80-90% of their work time completing hourly duties alongside their non-exempt co-workers, such as selling products, providing customer service, stocking shelves, operating the cash register, and assisting in the café. Pl. 56.1 ¶¶ 52-53. Defendants' offer no evidence regarding the amount of time Plaintiffs spent completing "hourly" versus "managerial" activities. Summary judgment is inappropriate where Plaintiffs present evidence that they spent the vast majority of their time completing hourly duties. *Indergit*, 2010 WL 1327242, *8 (denying summary judgment where plaintiff spent 90% of his work time completing hourly tasks).

### b.   Plaintiffs Were Regularly Supervised by Their Store Manager and Corporate Policies

Employees may not be exempt, even if they perform managerial tasks, if they "do so largely pursuant to the dictates of immutable corporate policy or at the behest of the Manager to whom they report." *Carhuapoma*, 2013 WL 1285295, *10 (quoting *Clougher*, 696 F. Supp. 2d

at 288).   Even while Plaintiffs served as Manager on Duty, they were provided forms and checklists to guide their compliance with corporate policies and had to seek Store Manager approval before taking almost any actions.   Pl. 56.1 ¶¶ 52-53, 63-79.   Plaintiffs were not involved in the formulation of those policies, and were not free to deviate from them.  Id. at ¶ 13, 15, 20, 27-28, 63-79.   As the *Clougher* court explained, "[b]oth freedom from supervision and the exercise of discretionary authority contemplate decisions of the kind and quality normally made by persons formulating policy within their spheres of responsibility, or who participate in this process, or who exercise authority to commit the employer in a substantial respect, financial, or otherwise." *Clougher*, 696 F. Supp. 2d at 292.  Thus, Defendants have failed to eliminate all issues of material fact regarding whether Plaintiffs were regularly supervised by their Store Managers and corporate policies.

### c.   Plaintiffs' Non-Exempt Duties Were More Important Than Their Exempt Duties

The relative importance of an employee's exempt and non-exempt duties can be critical to determining if an employee's work is primarily managerial.  *Indergit*, 2010 WL 1327242, at *6.  Because this is a "difficult and intensive factual inquiry," however, courts have held that determining the relative importance of an employee's exempt and non-exempt work should be left to the finder of fact.   *Id.*   The extent to which allegedly "managerial" tasks are also completed by lower-level non-exempt employees can be an issue of material fact when considering whether an employee is properly classified as exempt.  *Costello*, 928 F. Supp. 2d at 495.  Here, all of the allegedly "managerial" duties Plaintiffs completed were also completed by their non-exempt co-workers.  Pl. 56.1 ¶¶ 80-86. As such, Plaintiffs were managers in name only. "The words 'in charge' or 'highest ranked' are not…a magical incantation that render an

employee a bona fide executive regardless of his actual duties." *Indergit*, 2010 WL 1327242, \*7

(quoting *Ale v. TVA,* 269 F.3d 680, 691 (6th Cir.2001)) (internal quotations omitted).

### d. Plaintiffs' Effective Wages Were Less Than Their Non-Exempt Co-Workers

The fourth factor to be considered with regard to whether an employee's "primary duty" is management is the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work the employee performed. *Martinez*, 930 F. Supp. 2d at 525-26 (citing 29 C.F.R. § 541.700(a)). In order to determine the differences between the salaries of exempt and non-exempt employees, "courts reduce the exempt employee's weekly salary to an hourly rate of pay by dividing the salary by the number of actual hours worked, and then compare that hourly rate to the hourly rate of subordinate employees." *Carhuapoma*, 2013 WL 1285295, \*12.

In *Martinez*, the court refused to grant summary judgment to defendants because plaintiffs pay was more comparable to the pay received by non-exempt employees than the pay received by exempt employees, which called into question whether plaintiffs' "true value to the Hotel was saving payroll hours." *Martinez*, 930 F. Supp. 2d at 526; *see also Callari*, 2013 WL 6795911, \*20 (denying summary judgment because plaintiff's salary was comparable to pay received by inside salesperson co-workers); *Clougher,* 696 F. Supp. 2d at 293 (summary judgment denied where plaintiffs' effective hourly rate was sometimes less than his hourly co-workers, even where plaintiff also received performance bonuses, stock options, and other forms of executive compensation); *Costello,* 928 F. Supp. 2d at 495 (comparison of plaintiff's compensation to hourly co-workers "do[es] not appear to yield a significant disparity in compensation that suggest[s] as a matter of law that Costello's primary duty was management").

In the present case, Plaintiffs received a set yearly salary.  As of June 2010, Trimmer's annual salary was $44,100.  Pl. 56.1 ¶ 21, 87.  He received the same pay – $848.08 – each week no matter how many hours he worked.  Id.  As such, if Trimmer worked 40 hours in a week, his effective hourly pay rate was $21.20 per hour.  Id.  However, if Trimmer worked 45 hours in a week, his effective hourly pay rate was $18.85 per hour.  Id.  Finally, if Trimmer worked 50 hours in a week, his effective hourly pay rate was $16.96 per hour.  Id.

The non-exempt Merchandise Managers in Trimmer's store were paid a higher effective hourly rate than Trimmer.  Id. at ¶¶ 87-91.  As of March 28, 2010, Janet Cassidy was being paid $22.50 per hour – $1.30 *more* per hour than Trimmer, her purported superior.  Id. at ¶ 88.  When Cassidy worked overtime hours, the disparity in compensation increased, as she was paid $33.75 per hour for all hours worked over 40.  Id.  As such, Cassidy was paid $1,080.63 for weeks she worked 45 hours, and $1,237.50 for weeks she worked 50 hours – significantly more than Trimmer received when he worked the same number of hours.  Id.  The other Merchandise Manager at the Tribeca store, Jennie Susan Kiefer, was also paid a higher effective pay rate than Trimmer.  Id. at ¶ 89.  As of February 3, 2009, Kiefer earned $19.25 per hour.  Id.   As such, if she worked 45 hours in a week, she was paid $914.38, and if she worked 50 hours in a week, she was paid $1,058.75, which was also significantly more than Trimmer received for the same number of hours.  Id.  Conversely, as of March 28, 2010, Trimmer's Store Manager at the Tribeca store, Sara Dunn, was paid an annual salary of $83,200.00, which was almost double Trimmer's annual salary.  Id. at ¶ 90.

Philbin's annual salary was $41,800 throughout the relevant time period.  Id. at ¶ 29.  Like Trimmer, she received the same pay – $803.85 – each week no matter how many hours she worked.  Id. at ¶ 29, 87.  If Philbin worked 40 hours in a week, her effective hourly pay rate was

$20.10 per hour.   Id.  If she worked 45 hours in a week, her effective hourly pay rate was $17.86 per hour.  Id.  Finally, if she worked 50 hours in a week, her effective hourly pay rate was $16.08 per hour.

The Merchandise Manager in Philbin's store was also paid a higher effective hourly rate than Philbin.  As of March 28, 2010, William Ayres was paid $18.00 per hour to work as a Merchandise Manager at the Chesapeake store.  Id. at ¶ 93.  As such, Ayres was paid $855.00 for weeks he worked 45 hours, and $990.00 for weeks he worked 50 hours – considerably more than Philbin received for working the same number of hours.  Id.  Additionally, Philbin's Store Manager, Martha Kunkel, was paid an annual salary of $68,100.00 as of March 28, 2010, which far exceeded Philbin's salary.  Id. at ¶ 94.

Based on the fact that Plaintiffs were paid less than their hourly co-workers if they completed the same hours of work, it is clear that Plaintiffs' "true value" to B&N was saving them money on labor hours. *Martinez*, 930 F. Supp. 2d at 526.  Thus, Defendants cannot prove no issues of material fact exist regarding the aforementioned four-prong primary duty test.

### 2.        Plaintiffs Did Not Have the Authority to Hire or Fire

Defendants have failed to eliminate all issues of material fact exist as to whether Plaintiffs' had the authority to hire or fire, or whether their recommendations with regard to hiring and firing were given particular weight.  29 C.F.R. § 541.700(a); *see Costello*, 928 F. Supp. 2d at 488.

In *Costello*, the court denied summary judgment on this issue despite evidence that plaintiff conducted over 200 interviews, had input into raises and promotions for subordinates, and plaintiff testified that his recommendations were followed 90% of the time. *Costello*, 928 F. Supp. 2d at 489.  However, the court noted that defendants had not provided any evidence, such

as an affidavit, as to whether plaintiffs' recommendations "actually had an impact on those receiving them." *Id.*; *see also Callari*, 2013 WL 6795911, at *20 (denying summary judgment because there was conflicting testimony as to how often plaintiff's suggestions were followed); *Martinez*, 930 F. Supp. 2d at 527 (denying summary judgment because there was insufficient evidence to establish plaintiffs' recommendations were given weight).

Likewise, here, Defendants offer no evidence regarding whether Plaintiffs' recommendations were given particular weight. Plaintiffs testified that they took part in the interview process, but stated that they were required to adhere to a script of questions provided by B&N. Pl. 56.1 ¶¶ 20, 28, 74. They did not have ultimate authority with respect to hiring employees. Id. While Trimmer did discuss applicants with his Store Managers, his recommendations were not always followed. Id. at ¶ 15, 20. Defendants present no evidence that Philbin discussed applicants with her Store Manager. Plaintiffs also reviewed hourly employees, but their reviews were edited by their Store Managers and recommendations as to reviews were not always accepted. Id. at ¶¶ 20, 28. Also, Trimmer recommended termination only to the extent he was required to notify the Store Manager if an employee had reached the corporate-imposed maximum number of tardies or absences that resulted in termination. Id. at ¶ 15. Defendants do not assert that Philbin recommended termination.

As such, Defendants have failed to meet their burden of establishing that Plaintiffs had the authority to hire or fire, or that their recommendations were given particular weight.

## CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully submit that this Court should deny Defendants' motion for summary judgment in its entirety.

Dated: New York, New York
      January 6, 2014

                        Respectfully submitted,

                        By:

                        /s/ Brian S. Schaffer

                        **FITAPELLI & SCHAFFER, LLP**
                        Joseph A. Fitapelli
                        Brian S. Schaffer
                        Frank J. Mazzaferro
                        Andrew P. Kimble
                        475 Park Avenue South, 12th Floor
                        New York, New York 10016
                        Telephone: (212) 300-0375

                        *Attorneys for Plaintiff and*
                        *the Putative Class*