**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————

**Steven Trimmer et al.,**

                    **Plaintiffs,**              **13 Civ. 0579 (JGK)**

          **- v.-**                    **MEMORANDUM OPINION AND**
                                       **ORDER**
**Barnes & Noble, Inc. et al.,**

                    **Defendants.**
——————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Steven Trimmer, Eileen Philbin, and Craig

Meyers[1] brought this purported class action against the

defendants, Barnes & Noble, Inc. and Barnes & Noble Booksellers,

Inc. (collectively, "B&N"), alleging violations of the Fair

Labor Standards Act (FLSA).  The plaintiffs allege that they

worked for B&N but were erroneously classified as being exempt

from the overtime requirements of the FLSA and that they were

not compensated for the overtime hours they worked.  The

plaintiffs further allege that the defendants' violation of the

FLSA was willful.  Plaintiff Trimmer also brings a claim under

the overtime provisions of the New York Labor Law (NYLL).  This

Court has subject matter jurisdiction under 28 U.S.C. § 1331 and

29 U.S.C. § 216(b) over the FLSA claim and under 28 U.S.C.

§ 1367 over the NYLL claim.  The defendants now move for summary

_____

[1] Craig Meyers is an opt-in plaintiff, but no motions or
arguments have been made with respect to his claims.

judgment dismissing the Complaint in its entirety under Federal
Rule of Civil Procedure 56.

## I.

The standard for granting summary judgment is well
established.  "The [C]ourt shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs.
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The
moving party bears the initial burden of "informing the district
court of the basis for its motion" and identifying the matter
that "it believes demonstrate[s] the absence of a genuine issue
of material fact."  Celotex, 477 U.S. at 323.  The substantive
law governing the case will identify those facts that are
material and "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly

2

preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also</u> <u>Gallo</u>, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  <u>See</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed for purposes of this motion, unless otherwise indicated.

**A.**

Plaintiff Trimmer worked as an Assistant Store Manager ("ASM") for B&N at its Tribeca store in Manhattan, New York City, from October 2007 to January 2013. (Cerasia Decl. Ex. E, Schaffer Decl. Ex. A (collectively, Trimmer Dep.) at 9-10.) Plaintiff Philbin worked as an ASM for B&N at its store in Virginia Beach, Virginia from 1995 to June 1996 and at the store in Chesapeake, Virginia since June 1996. (Cerasia Decl. Ex. F, Schaffer Decl. Ex. B (collectively, Philbin Dep.) at 17-18.) The plaintiffs assert that they frequently worked more than forty hours per week as ASMs. (Trimmer Dep. at 210; Philbin Dep. at 82-83.)

The parties dispute the precise job duties of the plaintiffs. The defendants rely on the official Job Description of the ASMs. (Cerasia Decl. Ex. I.) The Job Description provided that an ASM "is responsible for the daily operation of the store" and "is also responsible for the entire store and staff when fulfilling the role of manager on duty (MOD)." (Cerasia Decl. Ex. I at 1.) The Job Description provided that an ASM "manages the daily operation of the store," "plans and appropriates work," "selects, interviews[,] and recommends the hiring of new booksellers," "oversees and monitors the new hire orientation and training process," "coaches and counsels all booksellers on performance issues," "prepares and delivers

4

performance reviews to booksellers and develops performance plans," and "resolves customer complaints." (Cerasia Decl. Ex. I at 1.)

The plaintiffs admit that they performed some of the functions in the Job Description.  For example, Trimmer interviewed, coached, assigned work to, recommended termination of, and completed performance reviews of employees of the store, (Trimmer Dep. at 82, 86, 96, 102-03, 147); he also dealt with customer complaints and may have had some discretion in handling refunds and discounts, (Trimmer Dep. at 66, 108, 110).  Philbin also performed similar functions.  (E.g. Philbin Dep. at 59-60, 76, 94-95.)

However, the plaintiffs assert that the Job Description did not accurately reflect the reality of their job duties and that the functions listed in the Job Description took up only a small part of their time at work.  Trimmer testified that he spent about eighty percent of the time at work performing the same routine tasks as hourly employees, such as serving customers, running the cash registers, assisting in the café, or stocking the shelves.  (Trimmer Decl. ¶ 11; Trimmer Dep. at 223.)  For example, Trimmer stated that "the cafe was pretty much a disaster, so we were over there all the time." (Trimmer Dep. at 35.)  Philbin also states in a declaration that she spent the great majority of her time performing such routine tasks.

(Philbin Decl. ¶ 13; Philbin Dep. at 71-72, 87-88.)   In
addition, the plaintiffs testified that certain nonexempt
employees, such as the Merchandise Managers, performed the same
tasks that the defendants contend to be supervisory or
managerial, such as carrying a key to the stores, assisting in
recruitment and training, and preparing performance reviews in
the same way that ASMs did.   (Trimmer Dep. at 53, 95, 103-104;
Schaffer Decl. Ex. D (Smith Dep.) at 37-41, 43-44.)

     Moreover, the plaintiffs dispute the amount of authority
and discretion they had even when performing what the defendants
contend to be supervisory or managerial tasks.   For example,
Trimmer stated that at least one of his superiors was present at
the store approximately eighty-two percent of the time.
(Trimmer Dep. at 64.)   Trimmer testified that he assigned work
to hourly employees only by reference to a Daily Assignment
Sheet and to "e-Planner," a corporate program that provided
employees tasks to complete.   (Trimmer Dep. at 146-47, 180-81.)
Trimmer further testified that his discretion in handling
refunds and returns was limited and that he was required to
check with the Store Manager for exercising the discretion.
(Trimmer Dep. at 109-10.)   Trimmer also testified that his
involvement in the interview process was "very little."
(Trimmer Dep. at 82.)   Philbin testified that her discretion in

6

various supervisory roles was similarly limited by corporate
directives and guidelines.  (<u>E.g.</u> Philbin Dep. at 75.)

### B.

Prior to 2005, B&N classified ASMs in every state as
employees exempt from the overtime provisions of the FLSA.
(Smith Dep. at 70-71.)  In 2005, B&N was sued in state court in
California by ASMs who claimed that B&N had violated provisions
of the California Labor Code relating to the payment of
overtime.  As a result of that lawsuit, B&N reclassified the
ASMs in California as nonexempt employees.  (Smith Dep. at 73-
74).  However, at that time, B&N did not reclassify the ASMs in
other states.  In May 2010, B&N reclassified all ASMs as
nonexempt, effective July 1, 2010.  (Pls.' 56.1 Statement ¶ 36.)
Consequently, from about 2005 to July 1, 2010, B&N classified
ASMs in every state other than California as exempt employees.
(Smith Dep. at 70-71.)  Accordingly, plaintiffs Trimmer and
Philbin were both classified as exempt employees and were not
paid overtime wages prior to July 1, 2010.  (Trimmer Dep. at 16;
Philbin Dep. at 139, 147.)

Michelle Smith, Vice President of Human Resources, was a
major participant in the decision-making with respect to the
classification of ASMs.  Smith testified that she had been a
long-time member of the Society of Human Resource Management

7

(SHRM) and had understandings of the FLSA from reading the
statute and SHRM's FLSA overviews.  (Smith Dep. at 11, 63-64.)
Smith also testified that she made frequent visits to stores and
observed the work of the ASMs.  (Smith Dep. at 75, 77.)  Smith
acknowledged that ASMs completed non-managerial duties such as
running a cash register or making book recommendations to
customers.  (Smith Dep. at 79-80, 196.)

     In addition, Trimmer testified that he complained to his
superiors about his job duties not matching up with the Job
Description.  He complained that he "had to do too much of
everything else, like cafe and cashiering."  (Trimmer Dep. at
34.)  He stated to the Store Manager that he "did not see [his
job duties] matching up to that of an assistant manager" and
that "being in the cafe all day long is not an assistant
manager."  (Trimmer Dep. at 35.)  The plaintiffs dispute the
basis for B&N's classification of ASMs as exempt employees.


                              **III.**

     The primary dispute in this action concerns the proper
classification of the plaintiffs as exempt or nonexempt from the
FLSA overtime requirement.  Section 7(a)(1) of the FLSA
generally requires employers to pay employees "at a rate not
less than one and one-half times the regular rate [of pay]" for
hours worked beyond forty hours per week.  29 U.S.C.

                                8

§ 207(a)(1).  Section 13(a) of the FLSA exempts from this overtime wage requirement employees who are "employed in a bona fide executive, administrative, or professional capacity," as those terms are "defined and delimited from time to time by regulations of the Secretary[ of Labor]."  29 U.S.C. § 213(a)(1).

The defendants argue that summary judgment should be granted because evidence in the record is sufficient to show that the plaintiffs came within the executive and administrative exemptions from the FLSA overtime provisions and were thus properly classified as exempt employees.

Because the FLSA explicitly delegates to the Secretary of Labor the authority to define the exemptions, under the standard of deference set forth by the Supreme Court in Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), "[t]he Secretary's regulations have the force of law and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." Freeman v. Nat'l Broad. Co., Inc., 80 F.3d 78, 82 (2d Cir. 1996) (internal citations omitted); Clarke v. JPMorgan Chase Bank, N.A., No. 08 Civ. 2400, 2010 WL 1379778, at *16 n.8 (S.D.N.Y. Mar. 26, 2010); see also Scott v. City of New York, 592 F. Supp. 2d 386, 398 (S.D.N.Y. 2008) ("The U.S. Department of Labor . . . has issued voluminous regulations to facilitate proper

compliance with the overtime provisions of FLSA. . . .
Regardless of whether these rules are labeled as 'regulations'
or 'interpretations,' they are entitled to <u>Chevron</u> deference.").

**A.**

Under the United States Department of Labor ("DOL")
regulations, an "administrative" employee means an employee who
is:

> (1) Compensated on a salary or fee basis at a
> rate of not less than $455 per week . . . ,
> exclusive of board, lodging or other
> facilities;
>
> (2) Whose primary duty is the performance of
> office or non-manual work directly related to
> the management or general business operations
> of the employer or the employer's customers;
> and
>
> (3) Whose primary duty includes the exercise
> of discretion and independent judgment with
> respect to matters of significance.

29 C.F.R. § 541.200(a). For purposes of the administrative
exemption, "[w]ork directly related to management or general
business operations includes . . . work in functional areas such
as . . . quality control; . . . personnel management; human
resources; . . . labor relations; public relations . . . ." 29
C.F.R. § 541.201(b).

The plaintiffs both performed duties involving labor
relations, human resources, and customer service. (Trimmer Dep.
at 66, 82, 86, 96, 102-03, 108, 147; Philbin Dep. at 59, 63, 73,

76, 94-95).  Thus, there can be no dispute that the plaintiffs performed at least some duties "directly related to the management or general business operations of the employer or the employer's customers."[2]  See 29 C.F.R. § 541.200(a)(2).  There is also no dispute that the plaintiffs were each paid more than $455 per week.  (Smith Decl. ¶ 2; Pl.'s 56.1 Statement ¶ 21.)

However, the parties dispute whether the plaintiffs exercised "discretion and independent judgment with respect to matters of significance."  See 29 C.F.R. § 541.200(a)(3).  "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  Id. § 541.202(e).

The defendants argue that ASMs like the plaintiffs exercised discretion and independent judgment on matters such as assigning work to employees, recommending termination of employees, authorizing returns, providing customers with refunds, and directing unruly customers to leave the store. However, the plaintiffs contend that, in carrying out these functions, they exercised little to no discretion or independent judgment.  For example, Trimmer claims to have assigned work to

---

[2] Whether such duties were "primary" duties of the plaintiffs will be addressed in Part III.C of this Memorandum Opinion along with the same issue in the context of the executive exemption.

employees by reference to the daily assignment schedule, and to "e-Planner," a corporate program providing lists of tasks to each store. (Trimmer Dep. at 145-47, 180-81; Schaffer Decl. Ex. E (Bottini Dep.) at 51-52.) Trimmer also asserts that, in recommending termination of employees, what he did was simply to review records and to apply a corporate policy which provided that employees are to be separated after being "egregiously late" for three times. (Trimmer Dep. at 102-03.) Trimmer also testified that, in carrying out functions such as authorizing a return, giving a discount, or directing a customer to leave the store, Trimmer was always either applying a corporate policy or required to consult with the Store Manager. (Trimmer Dep. at 67-69, 109-11.) Philbin testified to similar limitations in performing similar duties: for example, Philbin testified that generally she could not discipline an employee, issue a write up, or resolve an employee dispute without the approval for the Store Manager. (E.g. Philbin Dep. at 61-63, 98-103.) There is a genuine dispute as to the material fact of whether the plaintiffs exercised discretion and independent judgment with respect to matters of significance, precluding summary judgment on the issue of whether the plaintiffs were subject to the administrative exemption. See Difilippo v. Barclays Capital, Inc., 552 F. Supp. 2d 417, 424-25 (S.D.N.Y. 2008) (denying summary judgment because of genuine issues of material fact

existed as to whether the plaintiffs exercised sufficient discretion to fall under the administrative exemption); Wright v. Aargo Sec. Servs., Inc., No. 99 Civ. 9115, 2001 WL 91705, at *14-15 (S.D.N.Y. Feb. 2, 2001) (same); see also Ebert v. Holiday Inn, No. 11 Civ. 4102, 2014 WL 349640, at *11-12 (S.D.N.Y. Jan. 31, 2014) (granting summary judgment in favor of the plaintiff and holding that the plaintiff, whose "primary duties involved preparing standard reports, performing data entry tasks, and managing the disbursement of petty cash at the direction of his supervisors," was not exempt under the administrative exemption).

## B.

With respect to the executive exemption, an "executive employee" means an employee who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

13

29 C.F.R. § 541.100(a).  In particular, "management" duties include

> activities such as interviewing, selecting, and training of employees; . . . directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; . . . controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property . . . .

29 C.F.R. § 541.102.

Although the plaintiffs dispute the extent of their involvement in the "management" duties, there is no genuine dispute that they performed some such duties.  For example, Trimmer interviewed job candidates, coached the employees, assigned work on a daily basis, recommended termination of the employees, prepared performance reviews, and dealt with customer complaints.  (Trimmer Dep. at 66, 82, 86, 96, 102-03, 108, 147).  Trimmer also carried a key to the store and possessed the code to disarm/arm the store's security system.  (Trimmer Dep. at 53-54.)  Philbin carried out similar functions.  (<u>E.g.</u> Philbin Dep. at 59, 63, 73, 76, 94-95, 118-19.)  There is also no dispute that the plaintiffs were each paid more than $455 per week, (Smith Decl. ¶ 2; Pl.'s 56.1 Statement ¶ 21), and that the

14

plaintiffs customarily and regularly directed the work of two or more other employees.

However, there is a disputed issue of material fact as to whether the plaintiffs satisfied the fourth requirement for the executive exemption, namely, that they had the "authority to hire or fire employees" or that their "suggestions and recommendations" as to such decisions or any other change of status "[were] given particular weight."  29 C.F.R. § 541.100(a)(4).  While the plaintiffs were involved in interviewing job candidates and making recommendations, there is no evidence what weight their recommendations were given.  As to termination, Trimmer testified that he simply followed the corporate policy of recommending termination if a person was egregiously late on three occasions.  (Trimmer Dep. at 103.) There are genuine issues of material fact as to the authority of the plaintiffs on such personnel decisions and the weight their recommendations were given.  See Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 527 (S.D.N.Y. 2013) (denying summary judgment on the ground of executive exemption because of lack of evidence that the plaintiff's recommendations were given particular weight).

### C.

Moreover, with respect to both the administrative and the executive exemptions, there is a genuine dispute of material fact over whether the administrative or executive duties were the "primary" duties of the plaintiffs, as required by the DOL regulations for purposes of each exemption. See 29 C.F.R. §§ 541.100(a)(2), 541.200(a)(2). "The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Moreover, "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. § 541.700(b). However, "time alone . . . is not the sole test . . . ." Id.

In this case, Trimmer testified that he spent about eighty percent of the time at work performing non-exempt duties. (Trimmer Decl. ¶ 11; Trimmer Dep. at 223.) Philbin also states in a declaration that she spent the great majority of her time performing such routine tasks. (Philbin Decl. ¶ 13; Philbin Dep. at 71-72, 87-88.) Even though courts have granted summary

16

judgment and found exemptions to exist in cases in which non-exempt duties took up an even higher percentage of the employee's work time, e.g. Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1113-16 (9th Cir. 2001) (finding exemption even though nonexempt duties took up ninety percent of the plaintiffs' work time); Scott v. SSP America, Inc., No. 09 Civ. 4399, 2011 WL 1204406, at *8 (E.D.N.Y. Mar. 29, 2011) (same), the defendants here point to no evidence that weighs decisively in favor of finding that the exempt duties were the "principal, main, major or most important" duties of the plaintiffs.

Moreover, in defining the term "primary duty," the DOL regulations have specifically addressed the classification of assistant managers like the plaintiffs in this case:

> [A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c) (emphasis added).

In this case, the plaintiffs earned "little more than the nonexempt employees"--in fact, the plaintiffs sometimes earned

less than the nonexempt employees if the nonexempt employees worked more than forty-five hours a week.  Thus, the plaintiffs' levels of salaries weigh against a finding that administrative or executive duties were the "primary" duties of ASMs.  29 C.F.R. § 541.700(c).

It is also unclear whether the plaintiffs were "closely supervised."  See id.  Trimmer stated that at least one of his superiors, including the Store Manager, was present at the store approximately eighty-two percent of the time, (Trimmer Dep. at 64), and that Trimmer was required to consult with the Store Manager in carrying out functions such as authorizing a return or directing a customer to leave the store.  (Trimmer Dep. at 67-69, 109-11.)  Trimmer assigned work to employees by reference to the daily assignment schedule, and a corporate program. (Trimmer Dep. at 145-47, 180-81; Bottini Dep. 51-52.) Similarly, some of Philbin's work required approval from the Store Manager.  (E.g. Philbin Dep. at 61-63, 98-103.)  Thus, an issue of fact exists as to whether the ASMs worked under "close supervision," precluding a conclusion as a matter of law that the administrative or executive duties were the "primary" duties of the plaintiffs and that the plaintiffs were properly classified as exempt employees.

Accordingly, genuine issues of material fact exist as to whether the plaintiffs were properly classified as being exempt

from the FLSA overtime requirements under either the administrative exemption or the executive exemption, and the defendants' motion for summary judgment cannot be granted on this ground.

## IV.

The defendants also argue that the FLSA claim is barred by the applicable statute of limitations.  An action under the FLSA must be commenced within two years after the cause of action accrues.  29 U.S.C. § 255(a).  However, the statute of limitations is three years if a cause of action arises out of a "willful violation."  Id.  The alleged FLSA violations ended on June 30, 2010, after which date B&N classified all the ASMs as nonexempt, and this action was commenced on January 25, 2013, which was less than three years but more than two years after the end of the alleged FLSA violations.  Therefore, the FLSA claim can continue only if the plaintiffs can prove that the defendants' violations were willful within the meaning of the statute.

A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); accord Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  In

particular, to show the employer's "reckless disregard" of the
matter, "[p]laintiffs must prove more than that defendant
'should have known' it was violating the law. 'Should have
known' implies a negligence or 'reasonable person' standard.
Reckless disregard, in contrast, involves actual knowledge of a
legal requirement, and deliberate disregard of the risk that one
is in violation."  Hart v. Rick's Cabaret Int'l, Inc., 967 F.
Supp. 2d 901, 937-38 (S.D.N.Y. 2013) (citation omitted).
"Employers may[ ]be found to have acted recklessly pursuant to
the FLSA if they made neither a diligent review nor consulted
with counsel regarding their overtime practices and
classifications of employees."  Difilippo, 552 F. Supp. 2d at
425.

        The plaintiffs argue that the defendants acted willfully
because the defendants had notice of potential FLSA violations
but continued to classify the ASMs as exempt employees without
consulting an attorney.  The defendants argue that they had--and
still have--a good faith belief that the ASMs should be
classified as exempt employees (despite the subsequent across-
the-board reclassification in 2010)[3] and that there is no
evidence showing willfulness.

---

[3] The plaintiffs concede that they do not rely on the 2010
reclassification for showing willfulness in the defendants' FLSA
violations.  (July 7, 2014 Tr. at 11.)

However, there is a genuine issue of material fact as to whether the defendants acted recklessly in classifying the plaintiffs as exempt employees.  Trimmer testified that he spent at least eighty percent of his time working on nonexempt duties and that he complained to his superior that his job duties were nothing like those described in the Job Description.  (Trimmer Dep. at 35, 223.)   In addition, the defendants classified certain employees--Merchandise Managers in particular--as nonexempt, and the job duties of these Merchandise Managers often overlapped with those of the ASMs, including those that the defendants contend to be "administrative" or "executive" duties, such as interviewing job candidates, training, and preparing performance reviews.  (Smith Dep. at 37, 40; Trimmer Dep. at 97-98.)  Meanwhile, Smith, who was a major decision maker in the classification process, was aware of the legal requirements and had first-hand knowledge of the work of the ASMs and other non-exempt employees based on her frequent visits to stores.  Therefore, drawing all factual inferences in favor of the plaintiffs, a reasonable fact-finder may conclude that the defendants had sufficient notice of any potential FLSA violations.  See Difilippo, 552 F. Supp. 2d at 425-26 (holding that a genuine issue of material fact existed as to willfulness in the FLSA violations where the employer was placed on notice about the erroneous classifications in part because the employer

21

classified at least two employees as nonexempt and paid them overtime while other employees in the same position were denied overtime).

Moreover, the defendants reclassified ASMs in California as nonexempt following a lawsuit in 2005 but continued to classify ASMs in all other states as exempt, even though the ASMs in different states perform the same functions and share the same Job Description on which the defendants purport to rely for their classification decisions.  The defendants argue that the reclassification in California is irrelevant here because it was done solely under the more stringent exemption requirement under California law.[4]

However, the failure to reclassify ASMs as nonexempt in the rest of the country, after doing so in California, is at least

---

[4] In a letter submitted to the Court after the oral argument, the defendants cite to a recent decision, Lipnicki v. Meritage Homes Corp., No. 3:10cv605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014). In that case, the court found that a prior state-court action under the California Labor Code did not provide a basis for finding willfulness for an FLSA violation involving similar sales associates because that prior action was brought under state law.  Id. at *11.  However, the Lipnicki court provided no explanation for that conclusion.  Moreover, in reaching the conclusion of lack of willfulness, the Lipnicki court noted that, "[w]hile Plaintiffs contend that their sales activity on the lots was much more limited than Meritage understood, they present no evidence that Meritage was told this prior to the filing of this lawsuit," which undercut an argument for willfulness.  Id. at *10.  By contrast, in this case, there is evidence that the defendants were aware of the ASMs' actual job duties and of plaintiff Trimmer's dissatisfaction with having to spend a large amount of his time at work on non-exempt duties.

some evidence that a jury could consider on the issue of willfulness.  On its face, California law is sufficiently similar to the FLSA to place the defendants on notice that the ASMs in other states were misclassified as exempt employees. The California Labor Code allows exemption from the overtime requirements "if the employee is primarily engaged in the duties that meet the test of the exemption," Cal. Lab. Code § 515(a), and defines "primarily" as "[for] more than one-half of the employee's worktime," id. § 515(e).  On the other hand, the DOL regulations provide that, under the FLSA, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement.  Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work."  29 C.F.R. § 541.700. Therefore, the difference between the California and the federal standards is essentially that, while California law requires that employees spend more than half of their work time on exempt duties in order for them to be classified as exempt, federal law merely treats this fifty-percent threshold as a useful guidepost, above which employees "generally" may be classified as exempt.  This difference is not significant enough for the Court to conclude as a matter of law that the California lawsuit

was an insufficient warning of the FLSA violations in other states.

It is not disputed that the defendants reclassified ASMs in California as nonexempt in response to the California lawsuit but continued to classify ASMs in other states as exempt employees until the 2010 reclassification. The defendants point to no evidence that they conducted a diligent review or sought legal advice after the California lawsuit to examine whether ASMs in other states should also be reclassified in light of the California lawsuit. Thus, a reasonable fact-finder may find that the defendants were warned of possible FLSA violations in the classification of ASMs nationwide and that the defendants' disregard of this warning with respect to ASMs in other states was evidence of willfulness. See Brock v. Superior Care, Inc., 840 F.2d 1054, 1061–62 (2d Cir. 1988) (finding willfulness where the employer was on notice of its FLSA obligations because of prior violations and investigation by the DOL); Mohammadi v. Nwabuisi, No. 12 Civ. 0042, 2013 WL 1966746, at *13 (W.D. Tex. May 10, 2013) (finding willfulness where the defendants were running "a large, sophisticated company with over 500 employees" but "failed to take steps--such as securing legal advice from a competent professional--to ensure . . . compliance with the

[FLSA]" when the defendants "were on notice that their actions were governed by and potentially violated the FLSA").[5]

Hence, a genuine issue of material fact exists as to whether B&N acted knowingly or recklessly when it disregarded the risk that ASMs in other states were misclassified in light of all of the factual circumstances, including the complaints from Trimmer regarding his job duties, the awareness of the administrators regarding the legal requirements as well as the actual job duties of exempt and nonexempt employees, the different classifications of allegedly similar positions, and the warning from the California lawsuit.  Accordingly, the Court cannot decide as a matter of law that the defendants' violation, if any, was not willful, <u>see</u> <u>Difilippo</u>, 552 F. Supp. 2d at 425, and that this action is governed by the shorter, two-year statute of limitations.

Therefore, the defendants' motion for summary judgment on the plaintiffs' FLSA claim is **denied**.

---

[5] The parties dispute at great length whether the defendants' failure to consult an attorney shows willfulness.  Failure to consult an attorney, in and of itself, does not establish willfulness for an FLSA violation.  <u>See</u> <u>McLaughlin</u>, 486 U.S. at 135 (rejecting a standard that "would make the issue [of willfulness] in most cases turn on whether the employer sought legal advice").  The question here remains whether the defendants' acts or failure to act show that the defendants knowingly committed--or recklessly disregarded the risk of-- potential FLSA violations.  <u>Id.</u> at 133.

**V.**

The defendants have made no specific argument with respect to the plaintiffs' NYLL claim and have only argued that, because the NYLL's overtime provisions incorporate by reference the exempt standards of the FLSA, see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; see also Scott Wetzel Servs. Inc. v. N.Y. State Bd. of Indus. Appeals, 682 N.Y.S.2d 304, 305 n.1 (App. Div. 1998), the plaintiffs' NYLL claim fails if their FLSA claim fails.  The defendants have also argued that the Court should decline to exercise supplemental jurisdiction over the NYLL claim if the FLSA claim is dismissed.  See 28 U.S.C. § 1367(c)(3).  Both of these arguments are moot because the Court has declined to grant summary judgment dismissing the plaintiffs' FLSA claim.  Moreover, the defendants' arguments with respect to the statute of limitations do not apply to the NYLL claim, which is subject to a six-year statute of limitations.  N.Y. Lab. Law § 663(3). Accordingly, the defendants' motion for summary judgment with respect to the plaintiffs' NYLL claim is also **denied**.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion for summary judgment is **denied.** **The Clerk is directed to close Docket No. 32.**

SO ORDERED.

Dated:    New York, New York
          July 18, 2014        _____/s/_____
                                   John G. Koeltl
                               United States District Judge