UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN TRIMMER, on behalf of himself and
all others similarly situated,

                    Plaintiff,

                -against-

BARNES & NOBLE, INC. and BARNES &
NOBLE BOOKSELLERS, INC.,

                   Defendants.

Case No. 13 Civ. 579 (JGK)(SN)

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OF STATE LAW
CLAIMS PURSUANT TO FED. R. CIV. P. 23 AND CONDITIONAL
<u>CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT</u>**

 

**VEDDER PRICE P.C.**
Lyle S. Zuckerman
Roy P. Salins
Scott M. Cooper
1633 Broadway, 47th Floor
(212) 407-7700
New York, New York 10019
Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

I.  B&N'S STORES AND ITS ASM JOB POSITION .............................................. 2

    A.  The ASM Job Description Sets Forth Primary Duties That Are Managerial ....... 2

    B.  The Record Evidence Of An ASM's Job Duties Nationwide .............................. 3

II.  TRIMMER'S, PHILBIN'S AND MEYER'S EMPLOYMENT AS ASMS .................... 6

ARGUMENT ........................................................................................................................ 8

I.  THE COURT SHOULD NOT AUTHORIZE NOTICE OF THE FLSA ACTION ......... 8

    A.  Legal Standard ................................................................................................ 8

    B.  Allegations Of A Common Classification, Job Description And Policies
        Are Insufficient For Conditional Certification Where A Plaintiff's Claim
        Hinges On Evidence Of A De Facto Practice Of Performing Non-Exempt
        Work ............................................................................................................... 9

        1.  Plaintiff Cannot Establish That He Was Subject to a Common
            Policy or Plan That Violated the Law ....................................................... 10

        2.  The Denial of Conditional Certification in Jenkins and Vasquez –
            Two Managerial Exemption Cases – Apply Squarely Here .................. 13

        3.  B&N's Facially Lawful Policies Did Not Encourage the
            Minimization of Overtime Among Non-Exempt Employees ................. 14

II.  THE COURT SHOULD NOT CERTIFY A NYLL CLASS ......................................... 15

    A.  Legal Standard ............................................................................................... 15

    B.  Trimmer Cannot Satisfy Rule 23(a)'s Rigorous Standards ............................... 16

        i.  Trimmer Cannot Satisfy the Commonality Requirement ........... 16

        ii.  Trimmer Cannot Satisfy the Typicality Requirement ................. 20

        iii.  Trimmer Is Not an Adequate Class Representative .................... 22

    C.  Trimmer Cannot Satisfy Rule 23(b)(3) ........................................................... 22

        1.  Individual Issues Predominate over Common Issues .............................. 24

        2.  Trimmer Has Failed to Demonstrate Why a Class Action Is
            Superior ................................................................................................. 26

III.  THE COURT SHOULD NOT APPROVE PLAINTIFF'S PROPOSED NOTICES ...... 27

    A.  The Proposed Collective Notice And Opt-In Procedure Are Defective ............. 27

    B.  The Proposed Class Action Notice Is Defective ............................................... 29

CONCLUSION .................................................................................................................... 30

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Ahmed v. T.J. Maxx Corp.*,
No. 10 Civ. 3609, 2013 U.S. Dist. LEXIS 81942 (E.D.N.Y. June 8, 2013)...................... 13, 15

*Ali v. NYC Health & Hosps. Corp.*,
No. 11 Civ. 6393, 2103 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013) ......................... 10

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ..................................... 16

*Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344 (W.D.N.Y. 2011) .................................................. 14

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ............................................................ passim

*Cruz v. Dollar Tree Stores, Inc.*,
No. 07-2050, 07-4012, 2011 WL 2682967 (N.D. Cal. July 8, 2011) ...................................... 26

*Diaz v. Elec. Boutique of Am., Inc.*,
No. 04 Civ. 840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ............................................ 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................ 29, 30

*Gold v. New York Life Ins. Co.*, 730 F.3d 137 (2d Cir. 2013) ...................................................... 25

*Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469 (S.D.N.Y. 2010)................................ 8, 14

*Guillen v. Marshalls of MA, Inc.*,
No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ............................................... 10

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................... 28

*Hallissey v. Am. Online, Inc.*,
No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ......................... 27

*Harriel v. Wal-Mart Stores, Inc.*,
No. 11 Civ. 2510, 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012) ............................... 10

*Hernandez v. The Fresh Diet, Inc.*,
No. 12 Civ. 4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 29, 2014) ...................... 24

*Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 51-52 (W.D.N.Y. 2014) ......................... 19

*Hinterberger v. Catholic Health Sys.*,
No. 08 Civ. 380S, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009)......................... 28

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)................................................... 9, 11

# TABLE OF AUTHORITIES

**Page**

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ............................................................. 8

*Ikikhueme v. CulinArt, Inc.*,
No. 13 Civ. 293, 2013 U.S. Dist. LEXIS 77720 (S.D.N.Y. June 3, 2013) ................................ 9

*Indergit v. Rite Aid Corp.*, 2010 WL 2465488 (S.D.N.Y. June 16, 2010) .................................... 14

*Jenkins v. TJX Cos., Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012) ................................................ 11

*Khan v. Airport Mgmt. Servs., LLC*,
No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...................................... 8, 11

*Kopera v. Home Depot U.S.A., Inc.*,
No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 3382 (S.D.N.Y. Jan. 11, 2011) ...................... 23, 24

*Levinson v. Primedia Inc.*,
No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ............................................. 9

*Lewis v. Cosmopolitan of Las Vegas*,
No. 12 Civ. 1564, 2014 U.S. Dist. LEXIS 49068 (D. Nev. Apr. 8, 2014) ............................... 8

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012) ................................... 8

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ................................................ 22, 23

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ............................................................. passim

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
No. 12 Civ. 5651, 2014 U.S. Dist. LEXIS 132156 (S.D.N.Y. Sept. 18, 2014) ...................... 19

*Ramirez v. Riverbay Corp.*,
No. 13 Civ. 2367, 2014 U.S. Dist. LEXIS 106033 (S.D.N.Y. Aug. 1, 2014) ............. 23, 25, 26

*Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131 (S.D.N.Y. 2007) ................................................ 22

*Shayler v. Midtown Investigations, Ltd.*,
No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540 (S.D.N.Y. Feb. 27, 2013) .................... 22, 24

*Stevens v. HMSHost Corp.*,
No. 10 Civ. 3571, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27, 2014) ...................... 19

*Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005) ...................................................................... 26

*Tracy v. NVR, Inc.*, 293 F.R.D. 395 (W.D.N.Y. 2013) ................................................................ 24

iii

# TABLE OF AUTHORITIES

*Trawinski v. KPMG LLP*,
  No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366 (S.D.N.Y. Dec. 21, 2012)............ 20, 21, 22

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
  No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011) ................ 9, 10, 13

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ...................................................... 26

*Villanueva v. Trugreen Ltd. Partners*, 479 F. Supp. 2d 411 (D. Del. 2007) ................................. 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................... passim

*Wang v. The Hearst Corp.*, 293 F.R.D. 489 (S.D.N.Y. 2013) ...................................................... 24

*Winfield v. Citibank*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012) ...................................................... 15

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................... 9

## Statutes

29 C.F.R. § 541.700(a)................................................................................................................ 21

29 C.F.R. § 541.704 .................................................................................................................... 18

## Rules

Fed. R. Civ. P. 23 ................................................................................................................. passim

## PRELIMINARY STATEMENT

Plaintiff Steven Trimmer, a former Assistant Store Manager ("ASM"), commenced this putative collective and class action against defendants Barnes & Noble, Inc. and Barnes & Noble Booksellers, Inc. (collectively, "B&N") under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Plaintiff claims that B&N misclassified him and all other ASMs nationwide as exempt from the overtime requirements of the FLSA and NYLL.  He moves this Court to conditionally certify a putative collective of ASMs under § 216(b) of the FLSA and to certify a NYLL class of ASMs who worked in New York pursuant to Fed. R. Civ. P. 23.  (Br. 1.)  Both applications should be denied.

Plaintiff fails to meet his burden of demonstrating that he is similarly situated to the more than 1,000 current and former ASMs nationwide who he seeks to represent in his FLSA action.  Although plaintiff contends that he did not perform the managerial job duties set forth in his ASM job description, he provides no evidence that this was the result of a nationwide unlawful B&N policy, or even that the job duties of ASMs nationwide similarly deviated from the job description.  Indeed, plaintiff concedes that he was unaware of the day-to-day activities of the other purported class members, and the unrebutted documentary evidence establishes that plaintiff opted to assist subordinates performing non-exempt duties in contravention of B&N policy, and that he was chastised in his performance evaluations for doing so.  Plaintiff's own unique work experience is insufficient glue to bind a nationwide collective.  The two scant ASM declarations he submits do not change the result because they also fail to demonstrate that ASMs nationwide were subject to an unlawful uniform policy that resulted in ASMs performing non-exempt work as their primary duty.  On the contrary, the 15 ASM declarations submitted by

B&N establish that ASMs nationwide spent virtually all of their time performing the exempt job duties enumerated in the job description.

Trimmer also cannot withstand the "rigorous analysis" the Court must undertake to ensure that he meets the high burden imposed on him by Rule 23 to establish each of its requirements for class certification.  Since the record evidence clearly establishes that the work experiences of New York ASMs varied significantly, Trimmer cannot satisfy his burden to prove commonality, predominance or superiority.  Namely, there is no class-wide evidence sufficient to generate a common answer to the question of whether the putative class members were appropriately classified as exempt, and any resolution of this case will require individualized factual inquiries of the primary duties performed by each New York ASM.  Also, Trimmer cannot establish typicality or adequacy because he was routinely criticized for his failure to perform the management-related aspects of his job.

## STATEMENT OF FACTS[1]

### I.     B&N'S STORES AND ITS ASM JOB POSITION

B&N is the country's largest retail bookseller, and the leading retailer of digital media and educational products in the country.  B&N operates approximately 674 retail stores, each of which is run by a Store Manager ("SM") to whom one or more ASMs report.  (Bottini Tr. 13.)

### A.     The ASM Job Description Sets Forth Primary Duties That Are Managerial

Pursuant to their job description, ASMs were "responsible for the daily operations of the store."  (Schaffer Decl., Ex. G.)  The ASMs' primary duty was to serve as their store's "manager

---

[1] Transcript pages from the depositions of Steven Trimmer ("Trimmer Tr."), Eileen Philbin ("Philbin Tr."), Mark Bottini ("Bottini Tr.") and Michelle Smith ("Smith Tr.") are attached as Exhibits A through D to the Declaration of Lyle S. Zuckerman ("Zuckerman Decl.").

on duty" ("MOD"), during which they were "responsible for the entire store and staff." (*Id.*) At all other times, ASMs were charged with responsibilities to "open and close the store, oversee general store operations and ensure compliance with all standards of operation and performance, supervise booksellers, identify, prioritize and assign tasks by matching bookseller with store needs and react immediately and appropriately to all employee, customer or store issues." (*Id.*)

The job description identified several "Essential Functions," each managerial in nature:

(a)    Delivers positive financial results through efficient execution of initiatives and utilizes financial reports to identify additional sales and profit opportunities;

(b)    Plans and appropriates work to optimize payroll budget and to achieve the sales per hour (SPH) goal while ensuring compliance with all Integrated Store Operations (ISO) standards;

(c)    Selects, interviews and recommends the hiring of new booksellers; oversees and monitors the new hire orientation and training process;

(d)    Coaches and counsels all booksellers on performance issues and takes appropriate corrective action in partnership with the SM;

(e)    Prepares and delivers performance reviews to booksellers and develops performance plans and goals in partnership with the SM;

(f)    Resolves customer complaints in accordance with all operational and human resource guidelines, surfacing issues to the SM when necessary; and

(g)    Executes e-Planner to standard; customizes, communicates, delegates and follows-up on all tasks as the business demands.

## B.    The Record Evidence Of An ASM's Job Duties Nationwide

In sum, an ASM's primary duty was "running the store." (Bottini Tr. 44.) "The ASMs are like your tactical experts, they get in, they run the building. They're making the decisions off the [Daily Assignment Sheet] on who to move where, when I need backup at info or backup at cash . . ." (Bottini Tr. 110.) "[The ASMs] manage the store, they manage the employees in the store, the business . . . they're responsible for coaching, counseling, hiring, staffing to insure that

the booksellers are selling product, that sales goals are met, that they coach individuals if sales goals are not met . . . ."  (Smith Tr. 203.)

Since there was so much to be done when managing the store, the nature of the managerial tasks, and the time they spent performing each of them, varied greatly by ASM:

- The percentage of working time when ASMs were the highest-ranking manager in the store varied by ASM from a high of 80 percent to a low of 25 percent.  *See* Declaration of Barbara Cole ("Cole Decl.") ¶ 41 (80%); Declaration of Patricia Schulz ("Schulz Decl.") ¶ 36 (75%); Declaration of Sheryl Smith ("Smith Decl.") ¶ 33 (65-75%); Declaration of Deb Wenzel ("Wenzel Decl.") ¶ 35 (65%); Declaration of Cate McCarthy ("McCarthy Decl.") ¶ 36 (60%); Declaration of Ross Bugbee ("Bugbee Decl.") ¶ 35 (50-60%); Declaration of Leslie Pandaleon ("Pandaleon Decl.") ¶ 35 (50%); Declaration of Gabriel Jacobson ("Jacobson Decl.") ¶ 33 (40-45%); Declaration of Kathleen Hardwick ("Hardwick Decl.") ¶ 36 (35-65%); Declaration of Noah Jenquin ("Jenquin Decl.") ¶ 32 (25-35%).

- The ASMs' time as MOD ranged from 80% (32 hours per week) to 50% (20 hours per week).  *See* Cole Decl. ¶ 20 (80%); Declaration of Cristina Knighton ("Knighton Decl.") ¶ 18 (75%); Declaration of John Cowhig ("Cowhig Decl.") ¶ 17 (60-70%); Declaration of Erica Matthews ("Matthews Decl.") ¶ 16 (50-75%); Jenquin Decl. ¶ 17 (50%).

- Some ASMs had the independent authority to hire for numerous positions, and actually hired *hundreds* of B&N employees on their own.  *See* Wenzel Decl. ¶ 8 ("I . . . have personally hired approximately 300-400 individuals"); Schulz Decl. ¶ 8 ("I have personally hired at least 225 employees"); McCarthy Decl. ¶ 8 ("I have personally hired 200 to 300 job applicants"); Cole Decl. ¶ 9 ("I . . . have hired approximately 200 to 250 Booksellers"); Declaration of Michael Mullane ("Mullane Decl.") ¶ 9 ("I have personally hired approximately

100 to 200 job applicants").  Other ASMs hired *zero* or very few candidates, having only the power to recommend candidates for hire to the SM.  *See* Hardwick Decl. ¶¶ 7-8; Knighton Decl. ¶¶ 7-8; Pandaleon Decl. ¶¶ 7-8.  Still other ASMs could hire part-time, but not full-time, employees.  *See* Bugbee Decl. ¶ 7.

- Some ASMs were authorized to issue written discipline and performance improvement plans without SM approval, while some had limited authority.  *See* Knighton Decl. ¶ 12; Bugbee Decl. ¶ 12; Matthews Decl. ¶ 11; Mullane Decl. ¶ 12; Jenquin Decl. ¶¶ 11-12.

- Unlike Trimmer's, Philbin's and Meyer's allegations, other ASMs spent *de minimis* periods providing support on tasks which plaintiff claims are non-exempt, namely, operating the register, stocking shelves, and Café work.  The time spent on these tasks ranges from fewer than one hour per week to just under eight hours per week.  *See* Bugbee Decl. ¶¶ 28-30; Cole Decl. ¶¶ 32-34; Cowhig Decl. ¶¶ 29-31; Declaration of Monique Duci ("Duci Decl.") ¶¶ 29-31; Jacobson Decl. ¶¶ 26-28; Knighton Decl. ¶¶ 29-31; Matthews Decl. ¶¶ 27-29; McCarthy Decl. ¶¶ 29-31; Mullane Decl. ¶¶ 29-31; Pandaleon Decl. ¶¶ 27-30; Schulz Decl. ¶¶ 29-31; Smith Decl. ¶¶ 27-29; Wenzel Decl. ¶¶ 29-31.  Critically, some ASMs <u>never</u> stocked shelves, and assisted in the Café less than <u>once per month</u>.  *See* Hardwick Decl. ¶¶ 30-31.

- Some ASMs could deviate from suggested guidelines for store appearance and operations.  *See* Bugbee Decl. ¶ 37; Cole Decl. ¶ 43; Hardwick Decl. ¶ 38; Jacobson Decl. ¶ 35; Pandaleon Decl. ¶ 37; Schulz Decl. ¶ 38; Smith Decl. ¶ 35.

- Some ASMs had the power to issue verbal discipline or send an employee home for one day.  *See* Schulz Decl. ¶¶ 12-13; Hardwick Decl. ¶¶ 12-13; McCarthy Decl. ¶ 14; Mullane Decl. ¶ 12; Jenquin Decl. ¶¶ 11-12.

- At least one ASM supervised loss prevention, including by creating and implementing anti-theft procedures and directly supervising security. *See* Jacobson Decl. ¶ 30.

- Some ASMs set work schedules based on budgets and store business levels (Schulz Decl. ¶ 15; Knighton Decl. ¶ 15), while others did not (Cowhig Decl. ¶ 14).

## II.    <u>TRIMMER'S, PHILBIN'S AND MEYER'S EMPLOYMENT AS ASMS</u>

Trimmer worked for B&N in its Tribeca store in New York City as an ASM from October 2007 until his employment was terminated for poor performance on January 8, 2013. (Trimmer Tr. 8-10, 12.)  Philbin has worked for B&N as an ASM in its Chesapeake, Virginia store since June 1996.  (Philbin Tr. 18.)  Meyer worked for B&N as an ASM in its Hamilton Township, New Jersey store from March 2005 through August 2008, and in its Maumee, Ohio store from August 2008 through July 2013.  (Meyer Decl. ¶¶ 3-4.)

Trimmer, Philbin and Meyer claim that their ASM jobs diverged from the ASM job description because they spent the vast majority of their working time completing the same tasks as non-exempt workers.  (Trimmer Tr. 223-25; Philbin Tr. 71-72; Meyer Decl. ¶ 9.)  This presents a far different experience than their ASM counterparts.  (Zuckerman Decl., Exs. E-S.)

Significantly, Philbin's work experience differed markedly from that of Sheryl Smith, her co-ASM *in the same Chesapeake store*:  (i) although Philbin claims that 85% of her working day was devoted to duties such as operating the cash register, stocking shelves and assisting in the Café, Smith spent "no more than a few minutes a day" operating the cash register, "rarely stocked shelves," and "rarely worked in the café" (Smith Decl. ¶¶ 27-29); (ii) although Philbin claims not to have had authority to hire Booksellers, Smith had the unilateral authority to decide which Bookseller candidates to hire, and did so approximately 35 times (*id.* ¶¶ 10, 11); (iii) although Philbin claims not to have been authorized to resolve employee conflicts, Smith had the authority to send employees home from work if they failed to comply with B&N's policies (*id.* ¶

16); and (iv) although Philbin claims that she was obligated to follow B&N's guidelines for visual standards and store operations, Smith testified that B&N's guidelines were "a template," and that "there are no negative consequences if ASMs do not follow [B&N's] visual merchandising standards to the letter. . . . [B&N] has always told us that 'bookselling is local,' and that a store can and should modify its layout depending on its customer base" (*id.* ¶ 35).

Trimmer's work experience also was different than his ASM peers because he neglected to devote his attention to the tasks and responsibilities assigned to him as an ASM, despite being repeatedly counseled for this shortcoming.  For example, in April 2008, Trimmer received a "Needs Improvement" rating for "Store Visits/Company Goals" for his work in fiscal year 2007.  (Zuckerman Decl., Ex. T.)  Trimmer was warned that "as MOD you need to improve attention to operational detail (e-planner, bninside) to ensure that these items are handled in a timely manner for all departments (Ops, Café, Music) not just trade book displays."  (*Id.*)

Trimmer's managerial failures continued in fiscal year 2008, when his performance review contained the following criticisms (Zuckerman Decl., Ex. U):

- "You act as a role model for all booksellers; interactions with customers involve true 'selling' of books and memberships.  You need to work to direct this same level of commitment towards meeting and following up on the operational aspects of the business – ISO standards, daily merchandising and deadlines."

- "[Y]ou need to move out of your comfort zone and increase your role in the (backroom) operations of the store.  Develop a solid understanding of store financials and create goals to drive the business.  You are a partner and mentor in the Café, Music and with the CRM program but in addition to support you need to coach them to improve standards, details and grow opportunities to drive the business."

Trimmer was similarly counseled in fiscal year 2009 (Zuckerman Decl., Ex. V.):

- "You need to consistently push the bookseller staff and the managers beneath you for results.  You do not consistently use your time as MOD to talk about sales, memberships, upselling and handselling.  Our store was not at standards in both new memberships and renewals.  There should never be a shift that we don't talk about memberships with every cashier.  Use your shift meetings effectively to talk about company initiatives, new titles, and to challenge and motivate booksellers."

- "As the supervisor of other managers, you need to have an understanding of what needs to be accomplished on the floor. You should be providing direction to other managers and direct reports. You do not walk your areas of responsibility with your managers to ensure that standards are met throughout the section and to make sure they know what their priorities should be."

## ARGUMENT

## I.   THE COURT SHOULD NOT AUTHORIZE NOTICE OF THE FLSA ACTION

### A.   Legal Standard

A court has discretion to decide whether judicial efficiency will be served by permitting notice to the putative collective, and it may exercise such discretion only if the plaintiff satisfies his burden of establishing that he is similarly situated to the putative collective members he seeks to represent. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). While plaintiff's burden at the conditional certification stage is modest, "it is not non-existent," and certification "is not automatic."[2] *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011); *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10 Civ. 8820, 2011 U.S. Dist. LEXIS 74376, at *9 (S.D.N.Y. July 11, 2011); *Guillen v. Marshalls of MA, Inc.* ("*Guillen*

---

[2] The parties have taken the depositions of Trimmer, Philben, B&N's Vice President Director of Stores, Mark Bottini, and B&N's Vice President of Human Resources, Michelle Smith, and produced thousands of pages of documents concerning ASMs' job duties and B&N's operations. (Zuckerman Decl. ¶ 2.) In fact, plaintiff represented at the last conference that he did not need further discovery for class certification under Rule 23. Thus, the court should evaluate plaintiff's application for conditional certification under a heightened evidentiary standard. *See Lewis v. Cosmopolitan of Las Vegas*, No. 12 Civ. 1564, 2014 U.S. Dist. LEXIS 49068, at *19-22 (D. Nev. Apr. 8, 2014); *Villanueva v. Trugreen Ltd. Partners*, 479 F. Supp. 2d 411 (D. Del. 2007).

*I*'), 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).  "A court must . . . take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs."  *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293, 2013 U.S. Dist. LEXIS 77720, at *5 (S.D.N.Y. June 3, 2013).

Plaintiff's burden is to set forth evidence "sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Diaz v. Elec. Boutique of Am., Inc.*, No. 04 Civ. 840E, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Vasquez*, 2011 WL 2693712, at *3; *Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).  Plaintiff cannot merely point to company policies that are unrelated to the underlying inquiry of whether he (and the collective) was properly classified as an exempt employee (*e.g.*, B&N's bomb threat policy).  Rather, he must identify facts which show that he and the collective are "similarly situated . . . with respect to their allegations that the law has been violated."  *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

### B. Allegations Of A Common Classification, Job Description And Policies Are Insufficient For Conditional Certification Where A Plaintiff's Claim Hinges On Evidence Of A *De Facto* Practice Of Performing Non-Exempt Work

Plaintiff does not allege that B&N maintained a formal nationwide policy or practice of requiring ASMs to perform non-exempt work to such an extent that he would be deemed non-exempt from overtime pay.  Notably, plaintiff never argues that the ASM job description required ASMs to perform non-exempt work as their primary duty; nor does he point to nationwide training materials or policies requiring ASMs to perform significant non-exempt duties.  Instead, plaintiff contends that, despite B&N's formal, lawful policies and practices

9

requiring ASMs to engage primarily in exempt duties, his actual duties (and those of two other

ASMs nationwide) deviated from those lawful policies and practices.  (Br. 5-7.)  That is

insufficient to achieve conditional certification.

> 1. *Plaintiff Cannot Establish That He Was Subject to*
> *a Common Policy or Plan That Violated the Law*

Plaintiff initially points only to general commonalities among ASMs that utterly fail to

establish that ASMs primarily performed non-exempt duties, or that they were similarly situated

for purposes of conditional certification:  (i) ASMs were classified as exempt employees and

paid a salary; (ii) ASMs shared a common *lawful* job description; (iii) ASMs underwent common

*lawful* training; and (iv) ASMs were subject to various lawful corporate policies pertaining to

store appearance, emergency procedures and accident procedures.  (Br. 4-6.)

It is well settled that a plaintiff cannot establish that he is similarly situated to ASMs

nationwide by relying upon either the alleged common (mis)classification of ASMs as exempt,

or any common lawful job description, pay structure, or corporate policies applicable to ASMs.

*Vasquez*, 2011 U.S. Dist. LEXIS 74376, at *12 (a common job description "is not by itself

sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders

all putative class members as 'similarly situated'"); *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ.

9575, 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012); *Harriel v. Wal-Mart Stores, Inc.*, No. 11

Civ. 2510, 2012 U.S. Dist. LEXIS 97527, at *17 (D.N.J. July 13, 2012).  Rather, a plaintiff

"must demonstrate that he and the other employees are similarly situated with respect to their

claim – here, that they worked more than 40 hours a week <u>as part of a common policy or plan</u>

<u>that violated the law</u>."  *Ali v. NYC Health & Hosps. Corp.*, No. 11 Civ. 6393, 2103 U.S. Dist.

LEXIS 44091, at *4 (S.D.N.Y. Mar. 27, 2013) (emphasis added).  Plaintiff's burden is to provide

evidence of "some identifiable nexus which binds [him] and potential class members together as

victims of a particular practice." *Jenkins v. TJX Cos., Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Plaintiff, therefore, "must demonstrate" that he is "similarly situated to the putative collective 'with respect to the claim that they were required to perform nonmanagerial job duties in contravention of the formal job description.'" *Id.* at 324 (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *4 (S.D.N.Y. July 11, 2011)).  In short, a plaintiff who alleges that he is non-exempt because his actual job duties deviated from his employer's job description and/or policies and procedures (that otherwise assigned exempt duties) must demonstrate that ASMs nationwide experienced the same deviation as part of an established practice.  Here, plaintiff provides anecdotal testimony from only two other ASMs, which is inconsistent with the declarations of ASMs nationwide whose job duties did not deviate from B&N's lawful policies.[3]  (*See* Zuckerman Decl., Exs. E-S.)  Indeed, Philbin's experiences did not match those of her co-ASM, whose sworn declaration reflects the performance of primary duties that were managerial in nature.  (*Id.*, Ex. R.)

Plaintiff fails to establish a nationwide practice of ASMs deviating from B&N's policies and procedures.  Thus, plaintiff's request for conditional certification leans most heavily on his fabricated theory that various innocuous and lawful B&N store operations policies so limited ASM discretion that ASMs were stripped of managerial prerogatives.  (Schaffer Decl., Ex. K.) None of these policies (in isolation or together) is "sufficient to demonstrate that [plaintiff] and potential plaintiffs together were victims of a common [nationwide] policy or plan that violated

---

[3] By way of example, although plaintiff testified that his SM ordered him to spend more time working the register, Cowhig testified that, as MOD, he could not spend significant time working the register if he wanted to perform his job well.  (Cowhig Decl., ¶ 29.)

the law." *Diaz*, 2005 WL 2654270, at *3.  There is no *actual evidence* that any of these policies nullified ASMs' executive- and administrative-exempt responsibilities (locally or nationwide) – plaintiff simply asks this Court to draw this conclusion from thin air.

Moreover, these generic policies had no bearing upon the responsibilities of ASMs, particularly their exercise of independent discretion and judgment with respect to matters of significance.  Instead, such policies were nothing more than:  (i) checklist reminders to ensure that certain work was performed – not necessarily by ASMs, but some store employee *whom ASMs supervised* (Schaffer Decl., Ex. K); (ii) guidance on what to do in the event of a bomb threat, robbery or personal injury (*id*.); (iii) guidance on how books were to be displayed on the shelf (spine vs. cover) for optimal aesthetic effect (Smith Tr. 119-20); and (iv) guidance on how B&N thought stores should be operated and a checklist of supervisory responsibilities associated with MOD (Bottini Tr. 74-75, 84-88, 93-94).  These policies were entirely lawful, and do not establish that ASMs' job responsibilities deviated from the job description.

In any event, the guidelines were not hard-and-fast rules.  For example, New York ASM Barbara Cole's sworn statement provides that "although [B&N] circulated guidelines for the layout of its stores, we would routinely deviate from those guidelines because our store's layout required it.  My co-ASM and I made judgments based on volume level, foot traffic, and what – in our estimation – would work for our store, and we did so on a frequent basis."  (Cole Decl. ¶ 43; *see also* Schulz Decl. ¶ 38 ("as an ASM, I had to consider what made sense based on the needs of my store, even if that resulted in some amount of deviation from [B&N's] guidelines"); Jacobson Decl. ¶ 35 ("my co-ASM and I sometimes strayed from [B&N's] initiatives because the practicalities of our store require it . . . for example, I strayed from . . . corporate guidance

when I led an initiative to significantly increase my store's selection of books in Spanish");
Bugbee Decl. ¶ 37; Hardwick Decl. ¶ 38; Pandaleon Decl. ¶ 37; Smith Decl. ¶ 35.)

> 2. *The Denial of Conditional Certification in Jenkins and Vasquez – Two Managerial Exemption Cases – Apply Squarely Here*

In *Jenkins*, the plaintiff ASM moved for conditional certification of all ASMs employed at HomeGoods stores nationwide on the grounds that they were subject to a common job description, uniform policies, and one set of management training materials. The court denied conditional certification, holding that "the plaintiff does not allege that HomeGoods' official, formal policy mandates non-exempt job duties and thus violates the FLSA in and of itself." *Id.* at 321. Since Jenkins alleged that "he primarily performed non-exempt duties," the court found that his motion hinged on an alleged "common *de facto* policy requiring ASMs to perform non-exempt tasks." *Id.* The court, however, declined to make the broad and unsupported inference that the *de facto* policy was an experience common in every HomeGoods store nationwide. *Id.*; *Ahmed v. T.J. Maxx Corp.*, No. 10 Civ. 3609, 2013 U.S. Dist. LEXIS 81942, at *37 (E.D.N.Y. June 8, 2013) (holding that where the employer's official policy is lawful, plaintiff must produce "significant evidence of a de-facto illegal policy" to secure conditional certification of ASMs) (quoting *Vasquez*, 2011 U.S. Dist. LEXIS 74376, at *3).

Similarly, in *Vasquez*, an FLSA-exempt store manager alleged that he was misclassified because he spent 80% of his time performing non-managerial tasks, such as stocking shelves and assisting customers in locating products. The plaintiff also identified six other store managers whose primary duties were non-managerial tasks such as selling products to customers, stocking shelves, cleaning the store, and working the register. The court denied conditional certification because there was no common unlawful employer policy or scheme, but rather a handful of anecdotal statements from managers who claimed that they performed hourly duties. Such

13

anecdotal statements are insufficient for conditional certification because "while the balance of work responsibilities for [store managers] at some retail locations may possibly support a finding of misclassification, in others the balance may tip in the opposite direction." *Id*. at *11.

### 3. B&N's Facially Lawful Policies Did Not Encourage the Minimization of Overtime Among Non-Exempt Employees

Plaintiff contends that B&N's Sales Per Hour ("SPH") calculation "determine[s] how many hourly employees can be scheduled for a shift." (Br. 6.) Meyer testified that this calculation resulted in a reduction of hourly employee payroll hours so as to require ASMs to perform hourly work, thereby reducing payroll costs and increasing store profits. (Meyer Decl. ¶ 16.) Plaintiff's grasping at straws fails, however, because he offers no *actual evidence* of such an unlawful plan. Rather, plaintiff asks this Court to make the canyon-sized leap that simply because B&N allocated payroll for each store, the ASMs were deprived of so many hourly workers that their primary duties were converted from exempt to non-exempt. There is no actual evidence of this, including any evidence that hourly workers' hours were diminished.

In the absence of *actual evidence* of such a nationwide scheme to violate the law, policies that "indirectly might encourage the minimization of overtime" are insufficient glue to bind an FLSA collective even at the first stage. *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011) (denying conditional certification because "facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, cannot form the equivalent of a 'common policy or plan that violate[s] the law,' merely because they indirectly might encourage the minimization of overtime."); *Guillen I*, 750 F. Supp. 2d at 479 (denying conditional certification, and distinguishing *Indergit v. Rite Aid Corp.*, 2010 WL 2465488 (S.D.N.Y. June 16, 2010), by holding that "in *Indergit*, there was evidence that the company had attempted 'to raise profits by decreasing the hours worked by

14

hourly employees and transferring their job duties to Management.'"); *Ahmed*, 2013 U.S. Dist. LEXIS 81942, at *42-43 (holding that although defendant reduced planned labor hours, it also reduced planned sales, so that the actual evidence suggested that the labor demands corresponded with workload).

This Court recognized in *Winfield v. Citibank*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012), that where an FLSA plaintiff alleges that a facially lawful policy has *de facto* unlawful results, *actual evidence* is required to substantiate the claim and to certify the class. There, the plaintiffs proffered testimony from Citibank's employees "across the nation" at 13 locations; and admissions from managers and employees that facially lawful policies were being implemented in an unlawful manner (including an e-mail revealing that one employee was explicitly instructed by his manager to falsify his timesheets to indicate that he had not worked overtime). *Id.* at 407. Plaintiff submits no evidence of a uniform plan by B&N to reduce labor costs by substituting exempt for non-exempt workers – because none exists. Accordingly, plaintiff's motion for conditional certification should be denied.

## II.     THE COURT SHOULD NOT CERTIFY A NYLL CLASS

As Trimmer cannot satisfy his minimal burden to establish the putative FLSA collective, he certainly cannot satisfy the far more rigorous standard of certifying a NYLL class under Rule 23. Indeed, Trimmer (who is the sole class representative) fails to submit a single declaration in support of his motion. There is simply no evidence that any other New York ASM's experience working at B&N was common to his experience.

### A.     Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). A class action is available

only to parties who "affirmatively demonstrate [their] compliance" with Rule 23's requirements. *Comcast*, 133 S. Ct. at 1432; *Dukes*, 131 S. Ct. at 2551.  A class may be certified only if the trial court is satisfied after "rigorous analysis" that the prerequisites of Rule 23 have been satisfied. *Id.*  The plaintiff must provide "significant proof" that the purported class *in fact* meets *all* the Rule 23 requirements.  *Dukes*, 131 S. Ct. at 2551, 2553.  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

The Supreme Court has repeatedly stated that a court should "probe behind the pleadings before coming to rest on the certification question."  *Comcast*, 133 S. Ct. at 1432.  And, the Rule 23 inquiry may overlap with the merits of the claims only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013); *Dukes*, 131 S. Ct. at 2551-52.  Importantly, "Rule 23 does not set forth a mere pleading standard . . . .  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Comcast*, 133 S. Ct. at 1432; *Dukes*, 131 S. Ct. at 2551.

### B.    Trimmer Cannot Satisfy Rule 23(a)'s Rigorous Standards[4]

#### i.    *Trimmer Cannot Satisfy the Commonality Requirement*

The commonality prong requires that the case involve "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Trimmer must prove that the class members "have suffered the same injury," and the class claims rely on a common contention that is "central to the validity of each one of the [class members'] claims in one stroke."  *Dukes*, 131 S. Ct. at 2551. In order to prove commonality, Trimmer must establish his ability "to generate common

---

[4] B&N does not dispute that numerosity or adequacy of class counsel is satisfied.

*answers*" to the common question of the putative class members' exemption status. *Id.* "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers apt to drive the resolution of the litigation*. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis added).

Trimmer's moving papers, however, fail to identify a single common question, much less common answers apt to drive the resolution of this litigation. Rather, Trimmer relies solely on his unsupported allegation that "all putative class members worked over 40 hours per week," that all New York ASMs were classified as exempt during the relevant period, and that B&N had uniform corporate policies concerning its ASMs (including policies on what to do in the event of a bomb threat, robbery or personal injury, and guidelines on how books were physically to be displayed on the shelf for optimal aesthetic effect). (Br. 10-11.) Plainly, the relevant issue in this case is whether the purported class members were appropriately classified as exempt under the NYLL's "administrative" or "executive" exemptions during the relevant time period, and the amount of their alleged damages. Thus, Trimmer must prove, using class-wide evidence, that all the ASMs were entitled to overtime wages because they did not qualify under any exemption to the NYLL.

The Second Circuit, while not completely foreclosing the availability of class treatment of exemption cases, has cautioned on the individualized nature of exemption analyses:

> The exemption question . . . is a mixed question of law and fact . . . involving a number of subsidiary questions, each of which may or may not be able to be proven in common with respect to all . . . managers. Significantly, the regulations make clear that these questions should be resolved by examining the employees' actual job characteristics and duties. . . . To determine whether an employee's primary duty is management, a court must analyze all

> the facts in a particular case, looking to the principal, main, major
> or most important duty that the employee performs.

*Myers*, 624 F.3d at 548.  Here, Trimmer contends that class treatment is appropriate because all

ASMs in New York were classified as exempt.  (Br. 11, 12.)  The Second Circuit, however,

expressly repudiated that argument in *Myers*.  *Id.* at 550 ("the existence of a blanket exemption

policy . . . demonstrated little regarding whether the constituent issues that bear on an

[employer's] ultimate liability are provable in common").

Trimmer also claims that the evidence of B&N's uniform, lawful corporate policies,

practices, job description, training and evaluations of ASMs establishes commonality.  This is

inconsistent with federal guidelines.  *See* 29 C.F.R. § 541.704 ("the use of manuals, guidelines or

other established procedures . . . does not preclude the [administrative] exemption").  In any

event, the ASM job description clearly reflected a position that fit well within the administrative

and executive exemptions and the policies and procedures B&N promulgated were guidelines

pursuant to which ASMs had discretion to act – which accounts for the significant variance

among New York ASMs concerning their respective authority to hire, fire, evaluate, discipline,

and supervise employees.  (*See* Zuckerman Decl., Exs. F, H, M, P and Q.)  For example:  (i) the

interview questionnaire was a guideline meant to assist ASMs in identifying candidate

competencies that should have been addressed during an interview, but it did not constitute a

hard-and-fast mandatory policy (Bottini Tr. 93-94); (ii) ASMs were responsible for completing

the daily assignment sheets to assign responsibilities to Booksellers and other B&N store

employees (Smith Tr. 136); and (iii) New York ASMs had discretion to deviate from B&N's

corporate guidance.  (*See supra* 12-13; Zuckerman Decl., Exs. F, M, P and Q.)

18

Finally, there are myriad individualized questions that must be tried by the finder of fact, which are raised by the lack of consistency across Trimmer's testimony as compared to that of the declarants.  For example:  (i) how much time did each ASM spend as MOD, and as the highest-ranking supervisor in the store?; (ii) whether, and to what degree, each ASM was empowered to hire employees, promote employees, evaluate employees, discipline employees, and assign employees work?; (iii) what percentage of time was spent performing non-exempt tasks, and were those tasks performed while exercising managerial responsibility for the store?; and (iv) how much overtime did each ASM actually work?  Accordingly, Trimmer's motion to certify a Rule 23 class must be denied because the answers to the common question of the putative class (*i.e.*, whether each individual ASM was properly characterized as exempt) cannot be answered by class-wide evidence, but instead must be answered by an analysis of the exact job duties performed by each individual ASM.  *See Myers*, 624 F.3d at 537; *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 Civ. 5651, 2014 U.S. Dist. LEXIS 132156, at *9 (S.D.N.Y. Sept. 18, 2014) (denying Rule 23 class certification because the classification of an individual as an independent contractor or employee required individualized, rather than representative, proof); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 51-52 (W.D.N.Y. 2014) (denying Rule 23 class certification because the question of liability will require an individualized analysis of supervisors that did not follow facially valid break policies).  S*ee also Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27, 2014) (decertifying a collective action of assistant managers under a less stringent standard than Rule 23 on the grounds that determining whether a plaintiff was subject to an FLSA exemption required individualized, rather than representative, proof).

ii.    *Trimmer Cannot Satisfy the Typicality Requirement*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of [those] of the class."  Fed. R. Civ. P. 23(a)(3).  "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence."  *Dukes*, 131 S. Ct. at 2551 (citations omitted).  Similar to Trimmer's attempt to prove commonality, he wrongly seeks to establish typicality by asserting that "[his] claims arise from the same course of conduct as the claims of the class – B&N's decision to classify all ASMs in New York as exempt and its failure to pay them overtime compensation."  (Br. 12.)  This is insufficient, and class certification should be denied because of the variance in the New York ASMs' duties.  (*See supra* 4-6.)

Furthermore, Trimmer's performance reviews during the relevant time period "call into question the typicality of [his] experience [as an ASM at B&N.]"  *See Trawinski v. KPMG LLP*, No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366, at *22 (S.D.N.Y. Dec. 21, 2012) (denying Rule 23 class certification because his poor performance "call[ed] into question the typicality of Trawinsky's experience at KPMG").  Trimmer was seriously deficient in terms of meeting the supervisory requirements of the ASM role, including his responsibilities as MOD.  (*See supra* 7-8.)  For example, Trimmer's 2008 review contained the following critique:

> [Y]ou need to move out of your comfort zone and increase your role in the (backroom) operations of the store.  Develop a solid understanding of store financials and create goals to drive the business.  You are a partner and mentor in the Café, Music and with the CRM program but in addition to support you need to coach them to improve standards, details and grow opportunities to drive the business.

20

(*Id.*)  The primary duties Trimmer alleges took up 80% of his workweek (greeting customers, helping customers find merchandise, upselling products, working the cash register, shelving and helping in the Café) were significantly different from those performed by the other New York ASMs.  (*See* Zuckerman Decl., Exs. F, H, M, P and Q.)  Accordingly, this Court "cannot conclude that each class member's claim arises from the same course of events or that each class member makes similar legal arguments to prove the defendant's liability and typicality is therefore not satisfied."  *Id.* (citations omitted).

Trimmer also is not suited to serve as a class representative because an essential question to be answered is whether the "primary duty" of an ASM qualifies under the administrative or executive exemptions.  The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  It is unreasonable, therefore, for an individual who failed to perform the employer's stated primary duties of his job to claim that he is an adequate representative of a class of others holding the same job (and who testify that they performed those primary duties).  (*See supra* 7-8.)  Thus, B&N's defense based on Trimmer's job performance "would distract from the merits of the purported class members' case because its litigation would require considerable time and resources."  *Trawinski*, at *22.

Finally, Trimmer cannot establish that his claims are typical of others in New York because he admits that he does not know whether the job responsibilities of ASMs varied by store.  (Trimmer Tr. 74.)  Indeed, Trimmer admits that he "[has not] really spoken to any other assistant managers" about their duties.  (*Id.* at 74-75.)  Trimmer knew only the ASMs in Tribeca, and he would see ASMs from other stores "hardly ever."  (*Id.* at 206-07.)  Trimmer admits that his observations of other ASMs were limited to a few visits to the store at the Citibank building in Manhattan and one visit to the Union Square store.  (*Id.* at 232-33.)  Trimmer further admits

that the longest amount of time he would have spent at either store was "not much, like a half hour, hour at most." (*Id*. at 234.) Trimmer's experience, standing alone, is insufficient. *See*, *e.g.*, *Shayler v. Midtown Investigations, Ltd.*, No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540 (S.D.N.Y. Feb. 27, 2013).

### iii.     *Trimmer Is Not an Adequate Class Representative*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether a named plaintiff will be an adequate class representative, courts inquire whether [] plaintiffs' interests are antagonistic to the interest of other members of the class." *Trawinski*, at \*22-23. Furthermore, "[t]here is overlap between the typicality and adequacy requirements, and the Second Circuit has not clearly delineated between them." *Id.* (citing *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007)). Here, Trimmer cannot establish adequacy due to his poor performance, failure to perform his managerial duties, and lack of knowledge of the actual job duties performed by his other purported class members. Since he is subject to unique defenses that threaten to become the focus of the litigation, he cannot act in the best interests of the class. *Id.*

### C.     <u>Trimmer Cannot Satisfy Rule 23(b)(3)</u>

Trimmer seeks to certify his proposed class under Rule 23(b)(3). (Br. at 13-14.) Even if Trimmer could satisfy commonality, typicality and adequacy, he cannot satisfy his burden under Rule 23(b)(3) to show: (i) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (ii) that class litigation "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Significantly, the predominance requirement is more demanding than the commonality requirement. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 3382, at *7-8 (S.D.N.Y. Jan. 11, 2011); *Myers*, 624 F.3d at 547. As the Second Circuit ruled in *Myers*:

> The [predominance] requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Therefore the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to individualized proof.

*Id.* (internal citations omitted); *Moore*, 306 F.3d at 1252.

Here, as in *Myers*, "[t]he exemption inquiry requires examination of the duties that the employee actually performs." *Id.* at 549. Trimmer attempts to avoid his obligation to meet this standard by claiming that all New York ASMs' job duties were controlled by uniform B&N policies and procedures. (Br. 15.) The record evidence, however, establishes significant variations in the actual job duties performed by New York ASMs. (*See* Zuckerman Decl., Exs. F, H, M, P and Q.) Thus, it is not feasible for Trimmer to argue that B&N's uniform policies paint a sufficiently general picture of the actual job duties of every ASM in New York during the relevant period, especially considering the ability of those ASMs to deviate from those policies.

Moreover, in light of the *Comcast* decision, a court must conduct a rigorous analysis of whether common issues related to liability predominate over individual damages assessments. Here, because each ASM's damages will be different, and such damages cannot be calculated according to any mathematical formula, damages cannot be assessed on a class-wide basis. Indeed, plaintiff has not offered a single methodology for determining damages – because none

exists.  *Ramirez v. Riverbay Corp.*, No. 13 Civ. 2367, 2014 U.S. Dist. LEXIS 106033 (S.D.N.Y. Aug. 1, 2014) (certifying subclass of non-exempt employees in off-the-clock case because the damages could be easily calculated by reference to time-clock entries); *Wang v. The Hearst Corp.*, 293 F.R.D. 489, 498 (S.D.N.Y. 2013) (noting that, due to the individualized nature of proof, "case management would be difficult, if not near impossible").

### 1.     *Individual Issues Predominate over Common Issues*

As the Second Circuit recognized in *Myers*, the question of whether a plaintiff is entitled to overtime is "a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether the plaintiff falls within the Labor Department's criteria" for an exemption.  *Myers*, 624 F.3d at 548. *See also Hernandez v. The Fresh Diet, Inc.*, No. 12 Civ. 4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 29, 2014) (denying class certification because the classification of a worker as an independent contractor or employee was "a close question that will turn on considerations which do not admit of common and representative proof"); *Tracy v. NVR, Inc.*, 293 F.R.D. 395, 400 (W.D.N.Y. 2013) (denying class certification because plaintiffs' claims related to individuals in different locations, under different managers, who performed duties to varying degrees in different ways, and because the plaintiffs' claims were too highly individualized to form the basis of a class action); *Shayler*, 2013 U.S. Dist. LEXIS 29540, at *27-28 (denying class certification because "the inquiry as to whether an individual is an independent contractor or employee is fact specific and may be employee specific"); *Kopera*, 2011 U.S. Dist. LEXIS 3382, at *10 (denying class certification because the question of whether assistant store manager trainees were properly classified under the executive exemption based on their actual duties was likely to be overwhelmed by a case-by-case inquiry).  Furthermore, as the Second Circuit has held, "FLSA regulations are explicit that the determination of an employee's exemption must be

based on the *specific employee's actual primary duties, not his or her title or position.*"  *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013) (emphasis added).

Here, individualized inquiries are necessary to determine whether New York ASMs were properly classified as exempt because the actual experiences of ASMs in New York were significantly varied.  (*See supra* 4-6.)  Trimmer admitted that he was unaware of the day-to-day activities of the other purported class members.  (*See supra* 21-22.)  Bottini testified that only the SMs of each store would know the tasks their ASMs actually performed, and that the exact tasks of an ASM are "clearly the decision of the SM and/or the MOD.  In . . . most cases, the ASM is making that decision . . . themselves based on the need.  It's not something [B&N was] directing centrally."  (Bottini Tr. 24-25, 59.)  Because the ASM's role as MOD was not task driven, B&N did not assign specific tasks to ASMs, as the ASM was supposed to have the discretion to supervise the floor in the manner he or she saw fit while working as MOD.  (Bottini Tr. 61.)

Moreover, Trimmer's reliance on *Ramirez* is misplaced.  Indeed, *Ramirez* confirms that Rule 23 class treatment is inappropriate in this case.  In *Ramirez*, the employer had a policy of not paying its employees for "gap periods" of time before and after an employee's scheduled shift in which an employee would be working after clocking-in and before clocking-out.  Thirty-five class members submitted sworn testimony, declarations or interrogatory responses that they worked during those "gap periods" for which the employer had a policy not to pay.  Thus, unlike here, the record in *Ramirez* established that the employer had an unlawful policy.  *Id*. at *13.

This Court's decision in *Ramirez* was also grounded in large part on the ease with which damages could be ascertained among the class.  A comparison of the employer's time records with the records of its employees' scheduled shifts would show the exact amount of time that the employees worked without being paid.  Thus, this Court held that although "the extent to which .

25

. . uncompensated on-the-clock work was performed during weeks in which plaintiffs worked more than forty hours may require individualized determinations, [] these determinations are likely to consist of mechanical calculations based on payroll records and undisputed employment policies at RiverBay." *Id.* at *16-17.  Accordingly, this Court distinguished *Comcast* because the damages in *Ramirez* could be easily proven by means of mechanical calculations of wages lost. *Id.* at *33.  Here, no such mechanical calculations are possible.

### 2.       *Trimmer Has Failed to Demonstrate Why a Class Action Is Superior*

To certify a class under Rule 23(b)(3), Trimmer must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Courts consider four factors, including "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  This factor dooms Trimmer's certification bid.

The Court must at this stage consider how this case, if certified, would be tried.  Trimmer offers no plan to help the Court with this inquiry.  Absent a coherent plan to try class claims efficiently, certification of a class action is not superior and poses "an unnecessarily high risk of introducing needless and avoidable complexity into an already complex case."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009); *Sweet v. Pfizer*, 232 F.R.D. 360, 369 (C.D. Cal. 2005) (denying class certification for absence of trial plan not submitted until reply brief).

The necessity of a trial plan is illustrated by *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 07-4012, 2011 WL 2682967 (N.D. Cal. July 8, 2011), in which the court initially certified a class of store managers.  As trial approached, it became clear that plaintiffs intended to rely primarily on the testimony of individual class members about their day-to-day job duties.  *Id.* at *7.  The court reversed itself and decertified the class, holding that such evidence lacks the "glue" necessary to provide a "reliable means of extrapolating from the testimony of a few exemplar class members to the class as a whole."  *Id.* at *5-6, 8.  The court recognized that a case

cannot be certified as a class action unless the results of a trial as to one class member's claims can fairly and reliably be extrapolated to the claims of other class members. *Id.* at *8.

Here, any class trial would be dominated by an independent factual analysis of the job duties and hours worked by each ASM in New York state. Such a trial is the exact scenario the Supreme Court and the Second Circuit cautioned against in *Dukes*, *Comcast* and *Myers*. Accordingly, class certification should be denied.

## III.    THE COURT SHOULD NOT APPROVE PLAINTIFF'S PROPOSED NOTICES

### A.    The Proposed Collective Notice And Opt-In Procedure Are Defective

If the Court determines that collective notice is appropriate (which it is not), the proposed collective notice and opt-in procedure are improper in several respects. [5]  (Schaffer Decl., Exs. M & N.)  <u>First</u>, the opt-in notice period should be revised to reflect a period of 60 days from the date that notice is mailed.  This time period has routinely been adopted by courts in the Second Circuit.  *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012).

<u>Second</u>, section 10 on page four should be revised to reflect that if an individual chooses not to opt into the collective action, he or she will neither be eligible to receive any benefits nor be responsible for any costs that result from this lawsuit.

<u>Third</u>, the collective notice should state that, if an individual opts in, he or she may be asked to appear for depositions, respond to written discovery, testify at trial, and pay costs to B&N if plaintiff does not prevail.  *See Hallissey v. Am. Online, Inc*., No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *12 (S.D.N.Y. Feb. 19, 2008).

---

[5] If this Court decides to permit distribution of a collective notice, B&N respectfully requests that the parties be ordered to meet and prepare a mutually agreeable notice and consent.

Fourth, B&N opposes plaintiff's request to post the notice in B&N's stores.  (Br. 22.)

Generally, first-class mailing is the preferred method to inform individuals of their ability to opt

into a collective action.  Alternative forms of notification should not be used unless the plaintiff

presents facts showing that such methods are necessary.  *See Gordon v. Kaleida Health*, No. 08

Civ. 378S, 2009 U.S. Dist. LEXIS 95729, at *35-37 (W.D.N.Y. Oct. 14, 2009); *Hinterberger, v.*

*Catholic Health Sys.*, No. 08 Civ. 80S, 2009 U.S. Dist. LEXIS 97944, at *40-41 (W.D.N.Y. Oct.

21, 2009).  Instead, plaintiff relies on *Hamadou*, a case in which defendants did not oppose the

posting request.  (Br. 22.)  Here, however, B&N opposes this request and will provide plaintiff

with appropriate mailing addresses if required.

Fifth, plaintiff's request for the issuance of a reminder notice should be denied.  (Br. 23;

Schaffer Decl., Ex. N.)  No showing has been or could be made that such notices are necessary,

and they "could potentially be interpreted as encouragement by the court to join the lawsuit."

*Guzelgurgenli*, 883 F. Supp. 2d at 357.  Plaintiff has not identified any reason why reminder

notices are necessary in this case, and therefore, the request should be denied.  *Id.*

Sixth, plaintiff's request for telephone numbers, e-mail addresses, and Social Security

numbers ("SSN") is premature.  *See Gordon*, 2009 U.S. Dist. LEXIS 95729, at *30-31;

*Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *40-41.  Personal, private information (most

particularly, SSNs and phone numbers) is unnecessary and should not be disclosed to plaintiff's

counsel, particularly since plaintiff has not demonstrated any need for such additional

information at this stage of the case.  *Id.*

Seventh, the notice period should be measured from the date of any court order granting

conditional certification, not from the date notices are sent to potential opt-in plaintiffs.  *See Ritz*

*v. Mika Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013).

28

Eighth, plaintiff's request for equitable tolling should be denied.  (Br. 25.)  "Equitable tolling is only appropriate in [] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  *Gordon*, 2009 U.S. Dist. LEXIS 95729, at *39 (internal citations omitted).  Plaintiff has made no showing that the statute of limitations should be tolled until notice has been sent to potential opt-in plaintiffs.  (Br. 25.)  Rather, plaintiff merely cites to cases in which courts have granted equitable tolling without providing any explanation how plaintiff has been "prevented in some extraordinary way from exercising his rights."  *Id.*  Here, the parties have already tolled the statute of limitations to account for the first stage of this litigation by stipulating that the deadline for an individual to opt into this lawsuit be tolled from March 1, 2013 through the date B&N filed their opposition to conditional certification.  (*See* Docket No. 26.)  Thus, the statute of limitations should resume running as of December 5, 2014 because plaintiff cannot show any exceptional circumstances that would necessitate further tolling of the statute of limitations.

Ninth, the "do nothing" section on page two of the collective notice should be revised as follows:  (i) it should state that by not joining the collective action, an ASM could still be represented by counsel of his or her own choosing; and (ii) the sentence "each day that you do not take action to protect your claims, they diminish" should be struck because it unfairly and improperly encourages ASMs to join in the collective action.

Tenth, plaintiff's attorneys should bear the cost of sending out the notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974).

### B.       The Proposed Class Action Notice Is Defective

The plaintiff's proposed class action notice ("class notice") is improper in several respects.  (*See* Schaffer Decl., Ex. L.)  First, the class notice should be revised to make it clear that the potential class is limited to ASMs who worked in New York.

<u>Second</u>, the class notice should be revised to state that the relevant time period begins on January 25, 2007.

<u>Third</u>, section 6 of the class notice should be revised to state that the class is limited to those ASMs who worked more than 40 hours in a week during the relevant time period.

<u>Fourth</u>, the class notice should advise purported class members that if they remain in the class action, they may be asked to appear for depositions, respond to written discovery, testify at trial, and pay costs to B&N if plaintiff does not prevail.

<u>Fifth</u>, section 4 of the class notice should be revised to state that "Barnes & Noble claims that it paid its ASMs properly, according to the law, during the relevant period."  This is consistent with the first page of the class notice, and it accurately reflects B&N's defenses.

<u>Sixth</u>, plaintiff's attorneys should bear the cost of sending out the notice.  *See Eisen*.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification of state law claims pursuant to Fed. R. Civ. P. 23 and conditional certification pursuant to the Fair Labor Standards Act should be denied.

Dated: New York, New York
       December 5, 2014

VEDDER PRICE P.C.


By:    /s/Lyle S. Zuckerman
       Lyle S. Zuckerman
       Roy P. Salins
       Scott M. Cooper
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
Attorneys for Defendants